Jasen, J.
The plaintiffs in this declaratory judgment action attack the validity of the Zoning Ordinance of the Town of New Castle in its entirety on the ground that the ordinance excludes multifamily residential housing from the list of permitted uses.
The Town of New Castle is a relatively quiet and undeveloped suburban community nestled in the hills of northern Westchester County. The town is but 35 miles north of New York City, and this close proximity to a major metropolitan center has placed it directly in the path of the post-World War II rush to suburbia. Since 1950, New Castle has experienced a three-fold increase in population, growing from 5,312 inhabitants to over 17,000. The town fathers, anxious to preserve as much of the rustic township as they could, took steps to prevent the construction of both apartment houses and small one-family homes in the town. Ever since the first zoning ordinance was adopted by New Castle, the town has refused to authorize or permit the development of any multiple-family dwellings within the boundaries of the town. A few older apartment buildings were built prior to the enactment of the ordinance and exist as nonconforming uses.
The present zoning ordinance, which was enacted in 1971 to replace a 1945 version, provides for 12 types of districts. Four districts are restricted to residential use based on minimum lot size. Districts R-2A and R-1A mandate two-acre and one-acre minimum lot sizes respectively, while the other two residential classes call for one-half and one-quarter acre lot development. Six districts are set aside for business development and another two are earmarked for industrial uses. However, in terms of surface area, most of the town is restricted to one- and two-acre residential development. In *106 none of the 12 districts would the development of multiple-family dwellings be permitted.
The plaintiffs, either individually or through corporations, had controlled or owned since 1955 a parcel of 50 acres situated on the southern end of New Castle. Their land fronts on Bedford Road to the west and Old Farm Road to the southwest and is zoned for one-acre residences. Indeed, the plaintiffs originally owned more land in the same parcel but subdivided it and constructed one-family houses, in conformity with existing zoning requirements. The properties adjoining the plaintiffs parcel on the west and east are zoned for one-half acre development. The property on the northern boundary is set aside for one-quarter acre lots. Just beyond the one-half acre zone to the west of the plaintiffs’ property lies a relatively large retail, commercial and industrial zone.
In early 1972, the plaintiffs planned the construction of a large condominium development on their remaining property. The proposed improvements would include public water and sanitary sewers, a five-acre lake, and a recreational area (including swimming pools and tennis courts) of seven or eight acres. The condominium’s community would be "age-oriented” and, with respect to married couples, either the husband or the wife would have to be at least 50 years of age. Mitchell Berenson, one of the plaintiffs, was informed by town officials that the requested zoning changes would not be made. Thereupon, this action was brought to declare the town’s zoning ordinance unconstitutional. In denying cross motions for summary judgment, Special Term found that triable issues of fact existed—the principal question being whether the need for multiple-family housing in New Castle "is so compelling as to amount to a deprivation of the constitutional rights of those people, who are presently, or would if economically feasible, become residents of the Town.” On cross appeals to the Appellate Division, that court stated its agreement with Special Term’s delineation of factual issues and affirmed the order denying summary judgment. The Appellate Division granted leave to appeal to our court upon a certified question as to the correctness of its order of affirmance. We agree that factual issues remain to be resolved upon a plenary trial and that the motions for summary judgment were properly denied. Accordingly, we would affirm the order of the Appellate Division and answer the certified question in the affirmative. However, we disagree with the formulation of the issues by the lower *107 courts. In view of the highly significant public policy considerations involved, it is necessary that we set forth our own views at some length in order that, upon the trial to be had in this case, the proper factual issues will be considered.[1]
In determining under what circumstances, if at all, a zoning board may adopt a regulation that would prohibit entirely the construction of any new multiple residential housing within its borders, a review of the legislative and judicial history of zoning would be instructive.
The Legislature has authorized town zoning boards, "[f]or the purpose of promoting the health, safety, morals, or the general welfare of the community,” to adopt zoning ordinances regulating and restricting, among other things* "the height, number of stories and size of buildings and other structures,” the size of building lots, and the over-all population density. (Town Law, § 261.) Zoning ordinances are susceptible to constitutional challenge only if "clearly arbitrary and unreasonable, -having no substantial relation to the public health, safety, morals, or general welfare.” (Euclid v Ambler Co., 272 US 365, 395; Matter of Diocese of Rochester v Planning Bd. of Town of Brighton, 1 NY2d 508, 522.) Thus, it necessarily follows that the validity of a zoning ordinance depends on the facts of the particular case and whether it is "really designed to accomplish a legitimate public purpose.” (Matter of Wulfsohn v Burden, 241 NY 288, 299.)
In 1931, our court struck down a village ordinance which, with the exception of a small plot of land at the end of the village, placed the entire village into one "use” district. (Dowsey v Village of Kensington, 257 NY 221, supra.) Buildings in the district were restricted to one-family dwellings, church structures and public buildings, such as libraries, schools and police stations. (257 NY, at p 225.) The court said that "the zoning ordinance has been framed for the purpose of excluding [apartment] buildings from the village in order to preserve it as a secluded quiet community of one-family detached homes.” (257 NY, at pp 229-230.) As such, the restrictions imposed were "patently unreasonable.” (257 NY, at p 230.)
*108 Shortly after the Dowsey decision was handed down, the Appellate Division, Second Department, upheld a Scarsdale ordinance which restricted the area of the village where apartment buildings might be constructed. (Matter of Fox Meadow Estates v Culley, 233 App Div 250, affd without opn 261 NY 506.) The village already had a number of business establishments and apartment houses which, by a natural process of site selection, were located in the vicinity of the local railroad stations. The zoning ordinance limited business and apartment house districts to the territory adjacent to the areas where such development had already occurred. The remainder of the village was zoned for single-family homes. The ordinance was held valid since a locality "may adopt plans suitable to its own peculiar location and needs, acting reasonably.” (233 App Div, at p 252.)
In 1959, we sustained the validity of a village minimum lot requirement. (Levitt v Incorporated Vil. of Sands Point, 6 NY2d 269.) The court ruled that a reasonableness requirement was satisfied since the village was in an "isolated geographical position in a fringe area on the northern tip of a peninsula”. Moreover, the district itself consisted of "rolling and partly wooded land in an attractive rural residential community.” (6 NY2d, at p 272 [emphasis in original].) We stated that the enactment of a two-acre minimum lot requirement might, in an appropriate case, be a legitimate exercise of the police power. Significantly, the lot size requirement did not extend throughout the village itself, but only applied within one residential district. (See, also, Hopewell Gardens v Town of East Fishkill, 76 Misc 2d 234; Gignoux v Village of Kings Point, 199 Misc 485 [two other instances where exclusive zoning ordinances were upheld].)
More recently, we ruled that a town may permissibly adopt a program providing for phased growth. (Matter of Golden v Planning Bd. of Town of Ramapo, 30 NY2d 359, 376, app dsmd 409 US 1003, supra.) However, we were careful to note that "community efforts at immunization or exclusion” would not be countenanced. (30 NY2d, at p 378.)
New York is not the only urban State to confront the issue presented here. As in our own State, however, the results have been mixed. The Supreme Courts of Pennsylvania and New Jersey have struck down exclusionary zoning ordinances. (Appeal of Girsh, 437 Pa 237; Southern Burlington County NAACP v Township of Mount Laurel, 67 NJ 151, app dsmd *109 423 US 808.) A Michigan court has taken a similar position. (Bristow v City of Woodhaven, 35 Mich App 205, 218-219.) The New Jersey and Pennsylvania cases involved minimum lot requirements, similar to the New Castle ordinance, whereas the Michigan case involved a prohibition on the use of mobile homes. On the other hand, in three States, it has been held permissible to exclude business structures from the community where adequate commercial services may be readily obtained in nearby communities. (Valley View Vil. v Proffett, 221 F2d 412 [Stewart, J.] [case involved a zoning ordinance of an Ohio village]; Cadoux v Planning & Zoning Comm. of Town of Weston, 162 Conn 425, cert den 408 US 924; McDermott v Village of Calverton Park, 454 SW2d 577 [Mo].) In one Federal case, the court sustained the validity of New Hampshire village’s minimum acreage requirement, at least as a temporary measure. (Steel Hill Development v Town of Sanbornton, 469 F2d 956, 962.) Florida courts have upheld the validity of exclusionary zoning provisions without any qualifications. (Blank v Town of Lake Clarke Shores, 161 So 2d 683 [Fla]; Gautier v Town of Jupiter Is., 142 So 2d 321 [Fla].)
In determining the validity of an ordinance excluding multifamily housing as a permitted use, we must consider the general purposes which the concept of zoning seeks to serve. The primary goal of a zoning ordinance must be to provide for the development of a balanced, cohesive community which will make efficient use of the town’s available land. (Cf. Matter of Golden v Planning Bd. of Town of Ramapo, 30 NY2d 359, 378, app dsmd 409 US 1003, supra.) By balanced, we do not mean to imply that a community must maintain a certain quantitative proportion between various types of development. Clearly, such a requirement would rub against one of the basic purposes of zoning, which is to provide in an orderly fashion for actual public need for various types of residential, commercial and industrial structures. (See Valley View Vil. v Proffett, 221 F2d 412, 418, supra.)
Similarly, the town is free to set up various types of use zones. There is no requirement that each zone must contain some sort of housing balance. Our concern is not whether the zones, in themselves, are balanced communities, but whether the town itself, as provided for by its zoning ordinances, will be a balanced and integrated community. Thus, as in the Scarsdale case, if a district is set aside for multiple-dwelling development, there is no requirement that other portions of a *110 town contain such developments. (Matter of Fox Meadow Estates v Culley, 233 App Div 250, affd without opn 261 NY 506, supra.)
While it may be impermissible in an undeveloped community to prevent entirely the construction of multiple-family residences anywhere in the locality "(see Dowsey v Village of Kensington, 257 NY 221, supra), it is perfectly acceptable to limit new construction of such buildings where such units already exist (Matter of Fox Meadow Estates v Culley, supra.)
The first branch of the test, then, is simply whether the board has provided a properly balanced and well ordered plan for the community. (See Udell v Haas, 21 NY2d 463.) Of course, what may be appropriate for one community may differ substantially from what is appropriate for another.[2] Thus, in this case, the court must ascertain what types of housing presently exist in New Castle, their quantity and quality, and whether this array adequately meets the present needs of the town. Also, it must be determined whether new construction is necessary to fulfill. the future needs of New Castle residents, and if so, what forms the new developments ought to take.
Secondly, in enacting a zoning ordinance, consideration must be given to regional needs and requirements. It may be true, for example, that New Castle already has a sufficient number of multiple-dwelling units to satisfy both its present and future populations. However, residents of Westchester County, as well as the larger New York City metropolitan region, may be searching for multiple-family housing in the area to be near their employment or for a variety of other social and economic reasons. There must be a balancing of the local desire to maintain the status quo within the community and the greater public interest that regional needs be met. Although we are aware of the traditional view that zoning acts only upon the property lying within the zoning board’s territorial limits, it must be recognized that zoning often has a substantial impact beyond the boundaries of the municipality. *111 Thus, the court, in examining an ordinance, should take into consideration not only the general welfare of the residents of the zoning township, but should also consider the effect of the ordinance on the neighboring communities. While regional needs are a valid consideration in zoning, apart from any question as to the standing of persons outside the zoning jurisdiction to raise the issue, a town need not permit a use solely for the sake of the people of the region if regional needs are presently provided for in an adequate manner. Thus, for example, if New Castle’s neighbors supply enough multiple-dwelling units or land to build such units to satisfy New Castle’s need as well as their own, there would be no obligation on New Castle’s part to provide more, assuming there is no overriding regional need. The second branch of the test is whether the town board, in excluding new multiple housing within its township, considered the needs of the region as well as the town for such housing. So long as the regional and local needs for such housing were supplied by either the local community or by other accessible areas in the community at large, it cannot be said, as a matter of law, that such an ordinance had no substantial relation to the public health, safety, morals or general welfare.
Zoning, as we have previously noted, is essentially a legislative act. Thus, it is quite anomalous that a court should be required to perform the tasks of a regional planner. To that end, we look to the Legislature to make appropriate changes in order to foster the development of programs designed to achieve sound regional planning. While the people of New Castle may fervently desire to be left alone by the forces of change, the ultimate determination is not solely theirs. Whether New Castle should be permitted to exclude high density residential development depends on the facts and circumstances present in the town and the community at large. Until the day comes when regional, rather than local, governmental units can make such determinations, the courts must assess the reasonableness of what the locality has done. That is what remains to be considered upon the trial in this case.
The order appealed from should be affirmed, with costs, and the certified question answered in the affirmative.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
*112 Order affirmed, etc.

. We note, in passing, that, despite the arguments of the town to the contrary, the plaintiffs have a sufficient stake in the outcome to permit them to maintain this action. (Matter of Golden v Planning Bd. of Town of Ramapo, 30 NY2d 359, 365-366, app dsmd 409 US 1003; Dowsey v Village of Kensington, 257 NY 221, 228.) Secondly, this is a justiciable controversy and was brought in a proper form. (See Matter of Overhill Bldg. Co. v Delaney, 28 NY2d 449, 458.)

. In a recent case, the United States Supreme Court ruled that a small village could permissibly restrict its entire land to use as one-family dwellings. (Village of Belle Terre v Boraas, 416 US 1.) Belle Terre, a small community of 220 homes and 700 inhabitants, might properly be considered a "one zone” community. Obviously, New Castle, a town of over 17,000 people, would not be so small as to qualify as but ope "use” district. (Dowsey v Village of Kensington, 257 NY 221, supra; see Levitt v Incorporated Vil. of Sands Point, 6 NY2d 269, supra.)