■ STEVE HORN, Appellant, v COUNTY OF WESTCHESTER et al., Respondents. — In a proceeding pursuant to CPLR article 78, *inter alia,* to (1) review determinations of the respondent Department of Environmental Facilities of the County of Westchester (DEF) under the State Environmental Quality Review Act (SEQRA) (ECL 8-0111 *et seq.*) which accepted a draft environmental impact statement (DEIS) and final environmental impact statement (FEIS) for a certain sewer project to be constructed by respondent International Business Machines Corporation (IBM), and (2) review the "Statement of Findings" dated February 28, 1984 of the Town of New Castle issued pursuant to SEQRA, petitioner appeals from a judgment of the Supreme Court, Westchester County (Sullivan, J.), entered June 19, 1984, which dismissed the proceeding.

Judgment affirmed, with one bill of costs payable to the respondents appearing separately and filing separate briefs.

This proceeding seeks to review determinations made under SEQRA in connection with IBM's application to construct wastewater conveyance facilities in the Towns of Yorktown, New Castle and Ossining and to rehabilitate segments of the Village of Ossining's sewer lines, all in connection with IBM's expansion of its Yorktown research center and planned construction of a new research office center in the Town of New Castle. The entire cost of this multi-million-dollar sewer construction and rehabilitation project is to be borne by IBM, and upon completion, the new sewer system is to be owned by the municipalities through which the line passes, and excess capacity of the line will be available for the use of those municipalities.

Originally, five alternative routes for transporting the wastes to the county treatment plants were evaluated. From these five alternatives, three were chosen, after a scoping session attended by the involved agencies, as being the most desirable for IBM to address in its DEIS. These three most desirable routes were:

(1) Alternate A — the Pine Bridge Road route to the Ossining treatment plant;

(2) Alternative B — the Millwood interceptor route to the Yonkers treatment plant; and

(3) Alternate C — a combination of A and B.

IBM's DEIS discussed these "three most desirable alternative sewerage routes" as well as the "three least desirable off-site disposal alternatives and one on-site disposal alternative".

Public hearings on the DEIS were held on April 4, 1983 and May 4, 1983. By letter dated April 28, 1983 and at the May 4, 1983 public hearing, IBM announced that it was withdrawing any participation in alternatives B and C and was limiting its application and funding to Alternate A. Its reasons for withdrawing alternatives B and C were that it had been planning to commence construction that summer but there had been delays in the SEQRA review process; alternates B and C would have required the expenditure of public funds to expand the county trunk line into the Town of New Castle; there was concerted community opposition to B and C and it did not appear that funding would be forthcoming.

On July 27, 1983 IBM filed its FEIS. After further SEQRA review proceedings, the DEF rendered a "Statement of Findings", dated September 30, 1983, stating that the FEIS had met the requirements of 6 NYCRR part 617. The advantages and disadvantages of each were set forth and the DEF concluded that alternatives A, B and C were acceptable.

After authorization by the County Board of Legislators (Local Laws No. 107, 1983, eff Dec. 14, 1983), by agreement dated December 23, 1983, the County of Westchester granted permission to IBM to discharge sanitary wastewater and pretreated laboratory wastewater into the county trunk sewers tributary to the Ossining wastewater treatment plant from the IBM Thomas J. Watson research facility and proposed IBM Hudson Hills research facility.

On February 28, 1984, the Town of New Castle rendered its SEQRA "Statement of Findings", approving the proposed sewer line (along alternate A). By agreement of the same date, the Town of New Castle granted permission to IBM to construct wastewater conveyance facilities along the route in New Castle substantially as proposed and described as alternate A in the FEIS.

Petitioner then instituted the instant article 78 proceeding. Special Term dismissed the proceeding on the merits, stating in part: "Petitioner basically contends that the route chosen for the sewer line conflicts with county and local land use planning and housing policies which identify the Millwood area as the logical spot for future multi-family housing. Multi-family housing in the Town of New Castle has been mandated by virtue of the Court of Appeals decision in *Berenson v [Town of] New Castle*, 38 NY2d 102. Petitioner also asserts that even though the required

hearings were held in connection with the various applications to the municipal respondents, and SEQRA documents submitted and findings made by the agencies, that the respective environmental review processes were substantially deficient for many miniscule reasons. Petitioner essentially seeks to have this Court reexamine all the claims he made during the environmental reviews and hearings conducted by the respondents, and substitute it's [sic] judgment for that of those bodies, as to whether SEQRA requirements have been observed and whether the sewer project should be approved."

On this appeal petitioner asserts that the environmental impact statement was deficient, inter alia, because it failed to address the impact of alternate A upon the county and town's capacity to meet their multifamily housing policies and that petitioner — personally and through independent environmental consultants — voiced serious reservations about this failure but respondents brushed aside these objections and that Special Term simply deferred to respondents. Thus, contends petitioner, the subject objections were never considered by Special Term. It is argued that under this approach, objections made in the administrative review process could never be considered by Special Term.

We find no merit to this contention. It is manifest from the balance of Special Term's decision that the court independently reviewed the entire record and correctly concluded that "[o]n the record before this Court * * * the requirements of SEQRA * * * have been complied with".

It is manifest that the court's alleged policy of deference to the determinations of respondent agencies related not to the question of compliance with SEQRA procedural standards for environmental impact statements, but to the substantive merits of the project in issue, its route, and the town and county decisions to approve and proceed with the project.

Although petitioner argues that the sewer project environmental impact statement fails to consider adverse impacts upon county and town land use planning and housing policies that would result from constructing the sewer along IBM's preferred Pine Bridge Road route (alternate A), that the environmental impact statement failed to adequately consider reasonable alternatives to the proposed sewer project, and that the SEQRA findings adopted by the county and town are "patently deficient", we find no merit in such contentions. On the question of the various alternative routes and options, their viability and environmental impact, there was a massive presentation of evidence, and a careful analysis and consideration of that evidence. The requisite environmental impact "alarm bells" were

clearly rung, the mandated official "hard look" was taken at the evidence, and the subject agencies made reasoned elaborations delineating the basis for their determinations (see *H.O.M.E.S. v New York State Urban Dev. Corp.*, 69 AD2d 222, 232; see, also, *Matter of Town of Henrietta v Department of Environmental Conservation*, 76 AD2d 215, 220). Lazer, J. P., Brown, Boyers and Eiber, JJ., concur.