Norman ROSE and Catherine
Rose, Plaintiffs,

v.

VILLAGE OF UPPER NYACK, NEW YORK, George C. Cardona, H. Russell Drowne, IV, John Stockmeyer, Peter Huber, A. Ralph Bartolacci and Robert P. Lewis, Defendants.

No. 86 Civ. 6747 (MGC).

United States District Court,
S.D. New York.

Sept. 23, 1987.

Shea & Gould, New York City by Herbert B. Evans and George G. Nelson, for plaintiffs.

Thurm & Heller, New York City by Milton Thurm and John A. Catenia, for defendants.

OPINION

CEDARBAUM, District Judge.

Plaintiffs, who purchased real property in the Village of Upper Nyack ("the Village") in 1962, bring this action against the Village, George C. Cardona, a Trustee and Mayor of the Village, H. Russell Drowne, IV, Peter Huber and A. Ralph Bartolacci, members of the Board of Trustees of the Village, John Stockmeyer, a former member of the Board of Trustees, and Robert P. Lewis, Village Attorney of the Village. The first claim, which is asserted against the Village only, seeks injunctive relief and a declaration that the Village's zoning ordinance is invalid because it violates the Fourteenth Amendment. The second through fifth claims seek compensatory and punitive damages under the Civil

Rights Act of 1871, 42 U.S.C. § 1983, against the Village and all individual defendants who, while acting in their official capacity, allegedly violated plaintiffs' constitutional rights.

Defendants have moved to dismiss the complaint on grounds of abstention and immunity. Alternatively, defendants have moved to dismiss based on plaintiff's failure to file a notice of claim against the Village. Because I find that the central issue in this action is already pending before the New York State Supreme Court in an action commenced by plaintiffs in 1982, defendants' motion is granted to the extent that they seek a stay of this action.

### I. *Background*

In March 1962, plaintiffs purchased in the defendant Village real estate of approximately thirteen acres, the easterly five acres of which lie under the waters of the Hudson River. Since the adoption and certification by the Village of a zoning map in 1960, the property is and always has been zoned R–2, that is, for one-family dwellings on less than 30,000 square feet of land area (approximately three-fourths of an acre). At the time of plaintiffs' purchase in 1962, the zoning ordinance of which they complain was in effect.

In October 1981, the Village Board enacted an Interim Development Law ("IDL") which placed a one-year moratorium, subject to certain exceptions, on the issuance of building permits, certificates of occupancy, and subdivision and site plan approvals to enable the Village to prepare a Comprehensive Community Development Plan ("Comprehensive Plan"). Through the passage of subsequent local laws, the IDL remained in effect until January 1985. During the term of the IDL, the Board of Trustees issued several building permits but did not approve any rezoning applications.

At or about the time the IDL was adopted, but after it was published in the local newspaper as required by the Village Law of the State of New York, plaintiffs applied to rezone their property from a one-family residence zone to a multi-family zone. The Board of Trustees declined to consider the application on the ground that the Village had just enacted an interim development law and had declared a moratorium on rezoning applications in the Village. (Complaint, ¶ 3).

In December 1982, plaintiffs instituted a state court action against the Village seeking a declaration that the zoning ordinance was unconstitutional, an order compelling the Village Board to rezone plaintiffs' property and unspecified monetary damages. In 1984, plaintiffs amended the state court pleadings to assert two claims, one that the 1960 zoning ordinance was unconstitutional; and two, that the IDL was invalid. After expiration of the IDL in January 1985, the state court dismissed the cause of action attacking the validity of the IDL as moot. Plaintiffs' claim challenging the constitutionality of the zoning ordinance, which is the same as plaintiffs' first claim in this action, is still pending in the state court.

In July 1985, plaintiffs submitted a second application for rezoning. The application was forwarded to a professional planner who rejected the petition as incomplete. Plaintiffs allege that during the time their application was under consideration, defendant Cardona intentionally incited public anger which resulted in vandalism to plaintiffs' property, and threats of violence if plaintiffs continued their effort to rezone and develop their property.

In August 1986, plaintiffs filed this complaint claiming that the zoning ordinance is unconstitutional and that defendants violated plaintiffs' constitutional rights by intentionally obstructing their attempts to rezone their property. The first claim, asserted solely against the Village and seeking declaratory and injunctive relief, alleges that the zoning ordinance violates Section One of the Fourteenth Amendment because it is arbitrary, confiscatory and unreasonable in that it fails to serve the Village's needs for multi-family housing. Plaintiffs assert the second through fifth claims against all defendants, and seek compensatory damages of not less than three million dollars on each claim. In addition, plaintiffs request punitive dam-

ages of one million dollars against the individual defendants for each of the third through fifth claims.

## II. *Stay of Federal Action*

■ Although plaintiffs assert five separate claims for relief, the gravamen of their complaint is a challenge to the constitutionality of the Village zoning ordinance and the unwillingness of the Board of Trustees to repeal or amend it. This is the identical basis for the action now pending in state court. In addition, the question of zoning needs is an issue of local land use policy and, therefore, is more properly considered in the first instance by the state court. Since the state court was the first to be presented with this issue, I find it appropriate to stay this action to enable the state court to make a determination on the constitutionality of the ordinance.

In *Giulini v. Blessing*, 654 F.2d 189 (2d Cir.1981), the Second Circuit reviewed the district court's dismissal of a suit brought pursuant to 42 U.S.C. § 1983 challenging the constitutionality of zoning ordinances adopted by the Village of Pelham Manor. The court determined that the district court erred in dismissing the complaint, because on the face of the pleading it stated claims arising under section 1983. However, it held that the federal proceeding should be stayed where identical constitutional issues were being raised as a defense in state criminal proceedings against the federal plaintiff for violations of the same zoning ordinances. The court stated:

> [A] federal court is not precluded, in the exercise of its discretion, from staying proceedings in the action before it pending a decision by the state court, with a view to avoiding wasteful duplication of judicial resources and having the benefit of the state court's views.

*Id.* at 193 (citations omitted).

Similarly, in *Simmons v. Wetherell*, 472 F.2d 509 (2d Cir.), *cert. denied*, 412 U.S. 940, 93 S.Ct. 2777, 37 L.Ed.2d 399 (1973), plaintiff, who was a landowner in Connecticut, sued in state court challenging the state's condemnation of a portion of his land which was adjacent to a public airport. In a separate state court action, plaintiff

sued claiming the state had installed fencing and runway lights on another strip of property belonging to him. While plaintiff's state actions were pending, plaintiff sued in federal court under 42 U.S.C. § 1983 asserting claims similar to those pending in state court. The district court dismissed the complaint on the ground that it did not allege claims arising under section 1983. On appeal, the Second Circuit affirmed with respect to the condemnation claims, but found that with respect to the alleged unauthorized use of plaintiff's land for runway lights, the complaint alleged a deprivation of plaintiff's right to enjoy the use of his land. The court determined, however, that the claim was really a boundary dispute and was the same issue being litigated in the state court. Recognizing that the resolution of boundary disputes was a matter that was "traditionally within the purview of the state courts," and that a final decision in the state court action would be controlling of plaintiff's claims in federal court, the court stated:

> Thus, while we find a cause of action stated. . . . and remand, the district court should stay its hand here pending the resolution of the state court action, both in the interests of comity and efficient judicial administration.

*Id.* at 512.

In a later case applying the principles of *Guilini v. Blessing*, the court identified the factors to be considered in determining whether a stay is appropriate:

> (1) identity of parties and issues in both actions; (2) considerations of comity; (3) promotion of judicial efficiency; (4) adequacy and extent of relief available in the alternative forum; (5) likelihood of prompt disposition in the alternative forum; (6) convenience of parties, counsel, and witnesses; and (7) possibility of prejudice to a party as a result of the stay.

*Alameda Room, Inc. v. Pitta*, 538 F.Supp. 1072, 1077 (S.D.N.Y.1982) (citations omitted). In that case, the court stayed an action removed from state court which sought a stay of arbitration in a labor dispute. The court stayed the federal action on the ground that a prior action was

already pending in state court, in which the central issue was the same as the claim presented in the removed action. *See also Klein v. Walston & Co., Inc.,* 432 F.2d 936 (2d Cir.1970); *Bryant v. Commissioner of Social Services,* 530 F.Supp. 1175, 1185 n. 5 (S.D.N.Y.1982).

■ An analysis of this case in light of these seven factors supports the granting of a stay pending the outcome of the state litigation. First, with the exception of the individual defendants, whose presence in this action is questionable, the parties to the two actions are identical. In addition, the central issue in both cases involves the validity of the 1960 zoning ordinance.

With respect to considerations of comity, the validity of the Village's ordinance depends on application of law set forth in great detail in state court decisions, including especially *Berenson v. Town of New Castle,* 38 N.Y.2d 102, 378 N.Y.S.2d 672, 341 N.E.2d 236 (1975), which plaintiffs cite specifically in their state court complaint. While *Berenson* establishes an analytical test for determining the validity of a New York zoning ordinance, the breadth of its holding is not settled. *See, e.g., Asian American For Equality v. Koch,* 129 Misc.2d 67, 492 N.Y.S.2d 837 (Sup.Ct.N.Y. Cty.1985). Resolution of plaintiffs' claim hinges upon the interpretation given to *Berenson* and its progeny and involves issues which are particularly local in nature. Important state interests are at stake since the action involves the validity of the Village's zoning power as derived from the state's police power. Under these circumstances, it is appropriate to give the state court the opportunity to determine the constitutionality of the ordinance first.

With respect to considerations of judicial economy, it would be a duplication of judicial resources to permit both actions to proceed simultaneously. A judgment by the state court on the constitutionality of the zoning ordinance would greatly streamline plaintiffs' federal action.

Furthermore, there has been no allegation that the state action does not afford plaintiffs adequate opportunity to make their constitutional challenges. Plaintiffs can obtain effective relief in state court with respect to their second cause of action which seeks a declaration that the 1960 ordinance is null and void and a direction to the Village Board of Trustees to rezone plaintiffs' property. To the extent that plaintiffs' complaint in federal court asserts claims for relief for damages that are not being sought in state court, if plaintiffs are successful in obtaining declaratory relief in state court, the amount of damages may be adjusted to reflect adequately any additional damages plaintiffs may have suffered as a result of the stay. However, plaintiffs' primary concern appears to be obtaining a rezoning of their property, which would enable them to construct condominium units. The state court action can provide that relief. Therefore, the relief plaintiffs are seeking will not be jeopardized by the grant of a stay.

The state court action has been pending since 1982. Plaintiffs amended their complaint in 1984 and, at this time, do not appear to be pursuing actively their claims in that action. Prompt resolution of that action is largely in the hands of the plaintiffs. Plaintiffs have not expressed any reasons why they cannot proceed with their claims in state court. In fact, the state court was plaintiffs' original choice of forum in which to pursue their constitutional challenge to the zoning ordinance. For that reason, plaintiffs obviously cannot be heard to complain about the convenience of that forum.

Finally, I do not believe that a stay will result in prejudice to any party to the federal litigation. If plaintiffs are successful in their constitutional attack on the ordinance in state court and obtain the declaratory relief they seek, they may be heard promptly in federal court on their claims for damages.

In light of these factors, wise judicial administration suggests that I stay this action pending the outcome of the state court action.

Further support for staying or abstaining from considering plaintiffs' claims at this time is found in the doctrine of judicial deference known as the Colorado River

doctrine. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Under this doctrine, a federal court may dismiss or stay a suit pending before it in the interest of "wise judicial administration" where there is a concurrent state proceeding. 424 U.S. at 817, 96 S.Ct. at 1246. In *Colorado River* the Supreme Court suggested the factors a court should consider in determining whether to refrain from hearing a case over which it otherwise had jurisdiction. These factors included the convenience to the parties of either forum, the avoidance of piecemeal litigation, and the order in which jurisdiction was obtained by the concurrent forums. *Id.* at 818–819, 96 S.Ct. at 1246–1247. In a later case, the Supreme Court discussed the additional factors of whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction and whether federal or state law will provide the rule of decision. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 23–27, 103 S.Ct. 927, 941–943, 74 L.Ed.2d 765 (1983).

These factors all favor the granting of a stay in the present case. As discussed above, plaintiffs can not be heard to complain of the convenience of the state forum since that forum was their first choice. Plaintiffs sued in state court many years before they began the present litigation in federal court. The federal suit has not moved beyond the pleading stage at which time defendants made this motion to dismiss. Adjudication in the state court first will certainly avoid duplicative and piecemeal litigation since a resolution of the constitutionality of the statute by the state court may eliminate plaintiffs' federal claims. Furthermore, while resolution of plaintiffs' claim regarding the validity of the ordinance may depend on both state and federal constitutional law, the issues involved are not without federal and state law precedent and the state courts are fully familiar with this type of litigation. *See, e.g., Robert E. Kurzius, Inc. v. Incorporated Village of Upper Brookville*, 51 N.Y.2d 338, 434 N.Y.S.2d 180, 414 N.E.2d 680 (1980); *Allen v. Town of North Hempstead*, 103 A.D.2d 144, 478 N.Y.S.2d 919 (2d Dep't 1984). In addition, under the test set forth in *Berenson v. Town of New Castle*, 38 N.Y.2d 102, 378 N.Y.S.2d 672, 341 N.E.2d 236, the resolution of plaintiffs' constitutional claim will require a detailed inquiry into the present and future housing needs of the Village as well as the regional needs and requirements. 38 N.Y.2d at 110–111, 378 N.Y.S.2d at 680–681, 341 N.E.2d at 241–242. No tenable claim can be made that a federal court is in a better position than a state court to conduct this type of inquiry.

Therefore, I find that a stay pending the resolution of the state court action is also appropriate under *Colorado River* considerations.

### III. *Defendants' Claim of Immunity*

In light of my decision to stay this action pending the outcome of the state litigation, I have refrained from considering defendants' argument that the doctrine of absolute immunity should bar the claims against the local legislators. I note that a well reasoned opinion in a case very similar to this case supports defendants' position on this question. *See Searingtown Corp. v. Village of North Hills*, 575 F.Supp. 1295 (E.D.N.Y.1981).

### IV. *Conclusion*

For the foregoing reasons, defendants' motion to stay this entire action pending the outcome of the state litigation is granted. Because this case can neither be tried nor otherwise terminated, it is hereby transferred to the suspense docket pursuant to local rule 20.

SO ORDERED.