[622 NYS2d 395]

In the Matter of GERNATT ASPHALT PRODUCTS, INC., Appellant,
v TOWN OF SARDINIA et al., Respondents.

Fourth Department, February 3, 1995

140

APPEARANCES OF COUNSEL

*Devorsetz, Stinziano, Gilberti, Heintz & Smith, P. C.*, Syracuse *(Laurel J. Eveleigh, William J. Gilberti* and *Patricia A. Serventi;* and *Hancock & Estabrook,* Syracuse *[Stewart F. Hancock, Jr.],* of counsel), for appellant.

*David J. Seeger,* Buffalo *(DiFilippo, Bennett & Dauman,* East Aurora *[Anthony DiFilippo, III],* attorneys), for respondents.

## OPINION OF THE COURT

FALLON, J.

Petitioner, Gernatt Asphalt Products, Inc. (Gernatt), appeals from a judgment of Supreme Court that converted its CPLR article 78 proceeding seeking to annul amendments to the Town of Sardinia Zoning Ordinance to an action for declaratory judgment and declared that the aforesaid amendments had been validly and constitutionally enacted.

Gernatt contends on appeal that respondents (Town) improperly adopted those amendments to the Zoning Ordinance because they were different from the proposed amendments, thereby violating the notice requirements of Town Law §§ 264 and 265, and the reference requirements of General Municipal Law §§ 239-*l* and 239-m and Town of Sardinia Zoning Ordinance § 12.01. Gernatt further contends that the Town violated the Open Meetings Law (Public Officers Law §§ 100-111) and the State Environmental Quality Review Act (SEQRA; ECL 8-0101—8-0117; 6 NYCRR part 617). Gernatt contends that the amendments to the Zoning Ordinance are superseded by and inconsistent with the Mined Land Reclamation Law (MLRL; ECL 23-2701—23-2723; 6 NYCRR parts 420-426), are a departure from the comprehensive plan of the Town, and are unconstitutional exclusionary zoning.

Gernatt has mined in the Town of Sardinia for approximately 20 years. It currently has several operating mines. In 1989 Gernatt purchased certain property known as "Gabel Thomas" and applied to the Department of Environmental Conservation (DEC) for a permit to mine the land. In August 1993 the Town amended its Zoning Ordinance to prohibit mining everywhere within the Town and relegated presently operating mines to nonconforming uses of land.

Prior to August 1993 the Town allowed quarries, as well as clay, sand and gravel pits, as permitted uses in its R-A (Residential and Agricultural) Districts (Town Zoning Ordinance § 6.02 [A] [5]; § 7.07). On July 14, 1993, the Town Board held a meeting in response to information relating to the Gabel Thomas mining site received from GeoHydroCycle, Inc., a company specializing in groundwater investigations. The Board discussed GeoHydroCycle's report and agreed to continue to work with that company. At that meeting the Board resolved to propose certain amendments to the Zoning Ordinance and to authorize, *inter alia,* a duly noticed public hearing on the proposed amendments for August 18, 1993, and further resolved to schedule a duly noticed special Board meeting to be held after that public meeting.

As proposed, the amendments would repeal Town Zoning Ordinance § 6.02 (A) (5) and § 7.07 and would designate as a permissible use mining permitted by a valid permit issued by the DEC pursuant to the MLRL and a special use permit issued by the Town. In July 1993 the Town gave notice to abutting municipalities and counties concerning the proposed amendments.

On July 27, 1993, the Erie County Division of Planning replied to the submission of the Town's proposed amendments by expressly making "No recommendation". On August 4, 1993, the Town Planning Board recommended the amendments. On August 5, 1993, the Town gave the public notice of the proposed amendments as well as of the time and place of the public hearing. The hearing was conducted on August 18, 1993.

After the hearing was closed, the Board opened its regular meeting to discuss the proposed amendments. At the suggestion of the Town's attorney, the Board went into executive session. When the Board reconvened its regular meeting, it resolved to accept the Environmental Assessment Form and the Negative Declaration on the proposed amendments as

presented by the Town Supervisor. The Board then resolved, however, to adopt only that part of the amendments that would repeal Zoning Ordinance § 6.02 (A) (5) and § 7.07 and it tabled for further discussion the remaining portion of the proposed amendments.

## I. Town Law §§ 264 and 265

Under Town Law § 264 (1) and § 265 (1), a town may amend its zoning regulations only after a public hearing on those amendments, duly noticed in a local newspaper for at least 10 days; under Town Law § 264 (2), such written notice must be served within the same time period upon the clerk of any municipality or county within 500 feet of the property to be affected by the proposed amendments. Under Town Law § 264 (3), the town must also comply with General Municipal Law §§ 239-*l* and 239-m "relating to review by a county, metropolitan or regional planning board", as well as SEQRA and its implementing regulations, "and any other general laws relating to land use and any amendments thereto." That notice requirement imposes a high standard of clarity upon the municipality: " ' " The notice must be clear and unambiguous. It must be readily intelligible to the intended reader, the average citizen at large" ' *(Coutant v Town of Poughkeepsie,* 69 AD2d 506, 511, citing *Vizzi v Town of Islip,* 71 Misc 2d 483, 485). In passing on the sufficiency of a notice, the meaning must be ascertained through the eyes of a lay person who is presumed to lack the technical knowledge of a zoning expert. 'A purported notice which fails to adequately describe the contemplated change in zoning is not notice' *(Coutant v Town of Poughkeepsie, supra,* at p 512; *Albright v Town of Manlius,* 34 AD2d 419, 426). Where there is doubt as to the sufficiency of the notice, such doubt will be resolved against the notice *(Paliotto v Town of Islip,* 31 Misc 2d 447, *revd on other grounds* 22 AD2d 930)" *(Matter of Gardiner v Lo Grande,* 92 AD2d 611, 612, *affd* 60 NY2d 673).

Moreover, where an enacted amendment to a zoning regulation varies substantially from that which was proposed, the enacted amendment must be declared null and void *(Matter of Gardiner v Lo Grande, supra,* at 612-613; *Village of Mill Neck v Nolan,* 233 App Div 248, 249, *affd* 259 NY 596). That rule applies even to a situation where the enacted amendment is less restrictive than the proposed amendment upon which the public hearing was held; "[t]he power of [a town board] to

amend [a zoning] ordinance is delimited by the stated purpose in the notice of hearing" such that, although "[a] slavish and technical adherence to the notice is not required", "there cannot be substantial and extensive deviations from the expressed objectives of the public hearing" *(Callanan Rd. Improvement Co. v Town of Newburgh,* 6 Misc 2d 1071, 1072-1073, *affd* 5 AD2d 1003, citing *Village of Mill Neck v Nolan, supra).* In *Callanan Rd. Improvement,* the court annulled a new zoning ordinance that banned quarrying in all but one area of the town even though the proposed ordinance would have banned quarrying throughout the town.

■ Here, the proposed Special Use Permit Amendments were indeed different from the adopted Prohibition of Mining Amendments. Whereas the former would have generally banned mining in the Town but for permissible uses in certain districts subject to special use permit requirements, the latter succinctly and completely banned mining throughout the Town. Accordingly, Supreme Court should have annulled the adopted amendments, inasmuch as interested parties such as Gernatt neither had proper notice of those amendments nor an opportunity to debate them at a public hearing. It was manifestly unfair for the Town to ban all new mining, including mining at Gabel Thomas, when it had appeared that nonconforming uses could be maintained by special use permits.

## II. General Municipal Law §§ 239-*l* and 239-m

General Municipal Law §§ 239-*l* and 239-m provide that, prior to enacting a zoning ordinance (or an amendment to a zoning ordinance, as here), the municipality must refer the proposed amendment to the county planning board; if the county planning board disapproves, a supermajority vote of the town board is required to enact the amendment *(Baader v Town Bd.,* 171 AD2d 1046, 1048). The thrust of those provisions is that there be a coordinated review of the effects of the zoning change by local, county and State authorities. More than a decade ago, the Court of Appeals explained the rationale underlying the review and reporting function of a county planning agency in this context: "The function of the statement of reasons, perhaps even to a greater extent than the ultimate recommendation, is to assure both that the members of the referring body may be informed and aided in their determination of appropriate action to be taken with respect

to the zoning proposal and that the residents of the municipality, too, may have the benefit of the deliberations and conclusion of the regional planning agency in their formulation and expression of community sentiment and comment" *(Matter of Voelckers v Guelli,* 58 NY2d 170, 176, *affg* 87 AD2d 1009).

Indeed, the failure to refer a proposed amendment or new ordinance to the pertinent county or regional planning department is a jurisdictional defect requiring that the adoption of the proposed amendment or new ordinance be annulled *(Matter of Ferrari v Town of Penfield Planning Bd.,* 181 AD2d 149, 152-153; *Matter of Asma v Curcione,* 31 AD2d 883, 884; *Matter of Leisure Time Sales v Waring,* 91 Misc 2d 633, 634).

■ The Erie County Division of Planning replied to the submission of the Town's proposed amendments on July 27, 1993 by expressly making "No recommendation". There is no evidence that the Erie County Division of Planning was ever provided with a copy of the adopted amendments. Because the adopted amendments are substantially different from the proposed amendments, "the county * * * board should have [had] the opportunity to review and make recommendations" on the new amendments *(Matter of Ferrari v Town of Penfield Planning Bd., supra,* at 152). Because the Town did not afford the Erie County Division of Planning that opportunity, the petition should have been granted, nullifying the adopted amendments *(see, Matter of Ferrari v Town of Penfield Planning Bd., supra,* at 153).

### III. Town Zoning Ordinance § 12.01

Town Zoning Ordinance § 12.01 not only reiterates that the Town, when amending the Zoning Ordinance, must comply with the pertinent provisions of the Town Law, but also requires that any proposed amendments be referred to the Town Planning Board.

■ It is evident that the Town Planning Board reviewed and reported on the proposed amendments, recognized that certain mining uses would continue, and recommended that those amendments be adopted. However, there is no evidence that the Town Planning Board ever reviewed, much less reported on, the adopted amendments completely banning mining in the Town; indeed, given the quick turnabout by the Town Board after its executive session at the public hearing on the proposed amendments, the evidence is decidedly to the contrary. Thus, for an additional reason, the petition should

therefore have been granted, nullifying the adopted amendments.

## IV. The Open Meetings Law

"Every meeting of a public body shall be open to the general public, except that an executive session of such body may be called and business transacted thereat in accordance with section [105]" (Public Officers Law § 103 [a]). At such an executive session (viz., "that portion of a meeting not open to the general public" [Public Officers Law § 102 (3)]), the topics that may be discussed are circumscribed by statute and include, *inter alia,* matters involving public safety, the identity of an informer, criminal prosecutions and proposed, pending or current litigation (Public Officers Law § 105). In sum, the thrust of the Open Meetings Law is "the performance of public business in an open and public manner, with the public able to attend and listen to the deliberations and decisions that go into the making of public policy" *(Matter of Sciolino v Ryan,* 81 AD2d 475, 477). The "public body" so involved is defined as "any entity, for which a quorum is required in order to conduct public business and which consists of two or more members, performing a governmental function for the state or for an agency or department thereof, or for a public corporation * * * or committee or subcommittee or other similar body of such public body" (Public Officers Law § 102 [2]). The "courts are empowered, *in their discretion and upon good cause shown,* to declare void any action taken by a public body in violation of the mandate of this legislation" *(Matter of New York Univ. v Whalen,* 46 NY2d 734, 735 [emphasis in original]) and will scrutinize the propriety of executive sessions, "lest the * * * mandate be thwarted by thinly veiled references to the areas delineated thereunder" *(Daily Gazette Co. v Town Bd.,* 111 Misc 2d 303, 304; *accord, Matter of Sanna v Lindenhurst Bd. of Educ.,* 107 Misc 2d 267, 268-270, *mod on other grounds* 85 AD2d 157, *affd* 58 NY2d 626).

Here, although the Town Board and certain Town officials went into executive session at the close of the August 18, 1993 public hearing on the proposed Special Use Permit Amendments, ostensibly to discuss their likely effect on existing litigation, the Board emerged little more than 30 minutes later, and formally resolved, without any further public involvement, to accept a previously prepared Environmental Assessment Form and a Negative Declaration, as well as to

adopt the Prohibition of Mining Amendments. In effect, the public was permitted to know only the result, viz., that the Prohibition of Mining Amendments would be adopted without further SEQRA review, and, thus, was deprived of the opportunity to debate that adoption. That violated both the letter and the spirit of the Open Meetings Law inasmuch as the decisions apparently reached at the executive session "affect[ed] the public and directly relate[d] to the possibility of a municipal matter becoming an official enactment" *(Matter of Sciolino v Ryan, supra,* at 478).

## V. The SEQRA Review

■ Gernatt commenced this proceeding as a CPLR article 78 proceeding and the Town challenged Gernatt's standing to sue. In order to establish standing to sue in a CPLR article 78 proceeding, a petitioner must satisfy the two-pronged test set forth by the Court of Appeals, i.e., he must "show that the administrative action will in fact have a harmful effect on the petitioner and that the interest asserted is arguably within the zone of interest to be protected by the statute" *(Matter of Dairylea Coop. v Walkley,* 38 NY2d 6, 9). With respect to the first prong, the Court of Appeals has held that the petitioner must show, by pleading and proof, "that it has sustained special damage, different in kind and degree from the community generally" *(Matter of Sun-Brite Car Wash v Board of Zoning & Appeals,* 69 NY2d 406, 413). That standard applies in determining whether a person has standing to challenge a SEQRA violation *(Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency,* 76 NY2d 428). Here, inasmuch as the adopted amendments ban mining throughout the Town, an activity Gernatt has carried on for many years, Gernatt has satisfied the first prong of the test.

With respect to the second prong, a petitioner must demonstrate that the interest it asserts is within the zone of interest to be protected by SEQRA, viz., the environment, defined as: "the physical conditions which will be affected by a proposed action, including land, air, water, minerals, flora, fauna, noise, objects of historic or aesthetic significance, existing patterns of population concentration, distribution, or growth, and existing community or neighborhood character" (ECL 8-0105 [6]).

Consequently, in *Matter of Mobil Oil Corp.,* the Court of Appeals specifically held that "[t]o qualify for standing to raise a SEQRA challenge, a party must demonstrate that it

will suffer an injury that is environmental and not solely economic in nature" (76 NY2d, *supra,* at 433, citing *Matter of Niagara Recycling v Town Bd.,* 83 AD2d 335, 341, *affd* 56 NY2d 859; *Webster Assocs. v Town of Webster,* 112 Misc 2d 396, 402, *affd* 85 AD2d 882, *revd on other grounds* 59 NY2d 220). Upon its review of Mobil's petition, the Court concluded that, because "Mobil has not alleged that it will suffer any specific environmental harm as a result of the redevelopment of Oil City", it therefore "lacks standing to challenge the adequacy of SIDA's review of the Carousel Center project" (76 NY2d, *supra,* at 433; *accord, Young v Pirro,* 170 AD2d 1033, 1034).

However, the second prong is satisfied where, as here, the owner of property affected by a zoning amendment is the party challenging the SEQRA review of that legislation: "An owner's interest in the project may be so substantial and its connection to it so direct or intimate as to give it standing without the necessity of demonstrating the likelihood of resultant environmental harm. For even though such an owner cannot presently demonstrate an adverse environmental effect, it nevertheless has a legally cognizable interest in being assured that the decision makers, before proceeding, have considered all of the potential environmental consequences, taken the required 'hard look', and made the necessary 'reasoned elaboration' of the basis for their determination" *(Matter of Har Enters. v Town of Brookhaven,* 74 NY2d 524, 529; *see also, Matter of Ecumenical Task Force of Niagara Frontier v Love Canal Area Revitalization Agency,* 179 AD2d 261, 265, *lv denied* 80 NY2d 758). Therefore, Gernatt has satisfied the second prong of the test and does in fact have standing to challenge the Town Board's SEQRA review of the adopted amendments.

 As for the substance of Gernatt's claim, we conclude that the Town Board failed to identify the relevant areas of environmental concern, take a hard look at them and make a reasoned elaboration of the basis for its determination *(H.O.M.E.S. v New York State Urban Dev. Corp.,* 69 AD2d 222, 232; *accord, Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359, 363-364; *Onondaga Landfill Sys. v Flacke,* 81 AD2d 1022, 1023).

## VI. The Mined Land Reclamation Law (MLRL)

A municipality may not enact legislation to regulate an area expressly or impliedly preempted by the Legislature

*(Consolidated Edison Co. v Town of Red Hook,* 60 NY2d 99, 105; *People v New York Trap Rock Corp.,* 57 NY2d 371, 378; *Monroe-Livingston Sanitary Landfill v Town of Caledonia,* 51 NY2d 679, 683, *affg* 72 AD2d 957). Accordingly, a municipality may not enact a zoning ordinance that is inconsistent with State law *(Consolidated Edison Co. v Town of Red Hook, supra,* at 107; *Kamhi v Town of Yorktown,* 141 AD2d 607, 609, *affd* 74 NY2d 423, citing *Matter of Kamhi v Planning Bd.,* 59 NY2d 385, 389; *Matter of Zagoreos v Conklin,* 109 AD2d 281).

As amended in 1991, ECL 23-2703 (1) sets forth in relevant part the public policy underlying the MLRL: "The legislature hereby declares that it is the policy of this state to foster and encourage the development of an economically sound and stable mining industry, and the orderly development of domestic mineral resources and reserves necessary to assure satisfaction of economic needs compatible with sound environmental management practices."

In furtherance of that policy, ECL 23-2703 (2) adds in relevant part:

"For the purposes stated herein, this title shall supersede all other state and local laws relating to the extractive mining industry; provided, however, that nothing in this title shall be construed to prevent any local government from:

"a. enacting or enforcing local laws or ordinances of general applicability, except that such local laws or ordinances shall not regulate mining and/or reclamation activities regulated by state statute, regulation, or permit; or

"b. enacting or enforcing local zoning ordinances or laws which determine permissible uses in zoning districts."

That provision, as amended, effectively codified language used by the Court of Appeals in a 1987 case construing an earlier version of the statute; the Court interpreted that earlier version as allowing a municipality to allow mining in some, but not all, districts of that municipality *(Matter of Frew Run Gravel Prods. v Town of Carroll,* 71 NY2d 126, 131-133). The proposed Special Use Permit Amendments to the Town Zoning Ordinance would therefore have passed muster under the aforesaid supersession provision of the MLRL, but the adopted Prohibition of Mining Amendments do not. We conclude, therefore, that the Prohibition of Mining Amendments should be nullified.

## VII. Comprehensive Plan

We recently set forth the standard of review for a zoning ordinance modification: "Section 263 of the Town Law requires that amendments to a zoning regulation be made in accordance with a comprehensive plan *(Randolph v Town of Brookhaven,* 37 NY2d 544, 547). The purpose of that statutory requirement is to ensure that the amendment is calculated to benefit the entire community, not individual or special interests *(see, Asian Ams. for Equality v Koch,* 72 NY2d 121, 131; *Matter of Town of Bedford v Village of Mount Kisco,* 33 NY2d 178, 187-188, *rearg denied* 34 NY2d 668; *Udell v Haas,* 21 NY2d 463, 469). Although the comprehensive plan need not be in writing, it is clear that some planning must precede rezoning; that the [Town] Board must give some forethought to the community's land use problems; and that the amendment must be consistent with, and further, a specific comprehensive plan *(see, Asian Ams. for Equality v Koch, supra; Kravetz v Plenge,* 84 AD2d 422, 429-430). Amendments made in piecemeal fashion or by ' "irrational *ad hocery"* ' cannot be sustained *(Randolph v Town of Brookhaven, supra,* at 547, quoting from *Matter of Town of Bedford v Village of Mount Kisco, supra,* at 188; *Walus v Millington,* 49 Misc 2d 104, 108-109, *affd sub nom. Walus v Gordon Realty Corp.,* 31 AD2d 777)" *(Los-Green, Inc. v Weber,* 156 AD2d 994, *lv denied* 76 NY2d 701; *accord, Elstein v Board of Trustees,* 184 AD2d 1079, 1080; *Baier v Town of Ellery,* 182 AD2d 1083).

■ A challenger, however, must overcome the "strong presumption of validity [that] attaches to [such an] ordinance" *(Elstein v Board of Trustees, supra,* at 1080, citing *Matter of Town of Bedford v Village of Mount Kisco, supra,* at 186) with proof beyond a reasonable doubt. Here, the record reveals not only that mining has been a long-standing use in the Town but also that the Town's geologist, GeoHydroCycle, apparently found reason to be wary of mining beneath the Town's water table. However, the record does not support the leap of logic taken by the Town Board, without further explanation, from allowing mining as a special permitted use in certain areas to completely disallowing mining throughout the Town. It could well be that the same expert report, properly reviewed and explained, would support the total ban on mining, but that was not clearly articulated by the Town Board, which took action that was tantamount to not considering "problems presented and reasonable and uniform provisions to deal with

them, which tend to promote the general community welfare" *(Albright v Town of Manlius,* 34 AD2d 419, 423, *supra, mod on other grounds* 28 NY2d 108, *rearg denied* 29 NY2d 649). We, therefore, conclude that Gernatt satisfied its burden of proving that the adopted amendments must be annulled.

## VIII. Exclusionary Zoning

It is axiomatic that "the power to enact zoning regulations * * * may be exercised only pursuant to some valid public purpose rather than being used to justify some arbitrary exclusionary efforts *(Group House of Port Washington v Board of Zoning & Appeals,* 45 NY2d 266, 271)" *(Matter of Augenblick v Town of Cortlandt,* 104 AD2d 806, 809, *revd on other grounds* 66 NY2d 775, *rearg denied* 67 NY2d 647). Accordingly, "[a] zoning ordinance will be invalidated on both constitutional and State statutory grounds if it was enacted with an exclusionary purpose, or it ignores regional needs and has an unjustifiably exclusionary effect" *(Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville,* 51 NY2d 338, 343, *cert denied* 450 US 1042; *accord, Berenson v Town of New Castle,* 38 NY2d 102, 108, citing *Matter of Golden v Planning Bd.,* 30 NY2d 359, 378). The necessary fact-based, case-by-case inquiry will be vulnerable to a successful constitutional challenge only if the zoning ordinance in question is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare" *(Euclid v Ambler Co.,* 272 US 365, 395; *accord, Berenson v Town of New Castle, supra,* at 107; *Matter of Diocese of Rochester v Planning Bd.,* 1 NY2d 508, 522; *Matter of Wulfsohn v Burden,* 241 NY 288, 299). A reviewing court must therefore determine (1) "whether the [town or zoning] board has provided a properly balanced and well ordered plan for the community" *(Berenson v Town of New Castle, supra,* at 110, citing *Udell v Haas,* 21 NY2d 463, *supra)* and (2) whether that governing board considered, as it must, "regional needs and requirements" *(Berenson v Town of New Castle, supra,* at 110).

Here, the Town Board, after its executive session at the public hearing on the proposed Special Use Permit Amendments, dramatically shifted its focus and, without further public debate or explanation, adopted the Prohibition of Mining Amendments, thereby completely curtailing a potential source of livelihood for all mine owners in the Town. There is no evidence that the Town Board provided a comprehensive

community plan or determined that the total ban on mining would serve regional needs and requirements. Absent satisfaction of those criteria, which may well exist as in *Matter of Valley Realty Dev. Co. v Town of Tully* (187 AD2d 963), it appears that the Town engaged in impermissible exclusionary zoning.

## IX. Conclusion

Accordingly, for all of the above reasons, we conclude that the petition should be granted, nullifying the adopted amendments and judgment should be granted in favor of Gernatt declaring that the Prohibition of Mining Amendments to the Town of Sardinia Zoning Ordinance were invalidly and unconstitutionally enacted.

GREEN, J. P., BALIO, CALLAHAN and BOEHM, JJ., concur.

Judgment unanimously reversed, on the law, without costs, petition granted and judgment granted in accordance with the opinion by FALLON, J.