OPINION OF THE COURT
Phillip R. Rumsey, J.
Petitioner commenced this CPLR article 78 proceeding, seeking an order and judgment vacating the determination of respondent City of Binghamton Zoning Board of Appeals (herein ZBA) that the occupants of 63 Helen Street do not constitute a functional and factual family equivalent, as defined by the zoning ordinance of the City, of Binghamton.
Petitioner owns a single-family residence located at 63 Helen Street, in the City of Binghamton (the property), in a R-l residential single-unit dwelling district. On June 15, 2009, petitioner entered into a written agreement to lease the property to seven Binghamton University students, for a term of approximately two years commencing on August 15, 2009 and ending on August 30, 2011. On August 31, 2009, a complaint was received by the City of Binghamton Department of Building and Construction (the Department), that the property was being “rented to a frat house” (record, exhibit B, at 3). Following investigation, Zoning Officer G. Ted Tedino issued a notice of violation on October 30, 2009, advising petitioner of the Department’s determination that the seven individuals then residing at the property pursuant to the lease did not constitute a functional and factual family equivalent — as defined by the zoning ordinance — and, therefore, that their continued occupancy of the property would constitute a violation thereof.
*1034 Petitioner timely sought review of the notice of violation by the ZBA. Following a public hearing held on January 8, 2010, the ZBA upheld the Department’s determination. On February 15, 2010, the Office of the Corporation Counsel sent a notice to petitioner demanding, pursuant to RPAPL 715, that she take immediate action to evict the tenants from the property, and advising that, if she failed to do so within five days, the City of Binghamton would institute an eviction proceeding.
The interpretation by a zoning board of appeals of terms defined in its own zoning ordinance is entitled to great deference, and must be upheld if it is neither irrational nor unreasonable; judicial review is limited to an examination of whether there is a rational basis for the determination that is supported by evidence in the record (Matter of Ohrenstein v Zoning Bd. of Appeals of Town of Canaan, 39 AD3d 1041 [2007]; Matter of Point Lookout Civic Assn. v Zoning Bd. of Appeals of Town of Hempstead, 94 AD2d 744 [1983]; see also Matter of Kantor v Olsen, 9 AD3d 814 [2004]; Matter of Haas Hill Prop. Owners’ Assn. v Zoning Bd. of Appeals of Town of New Baltimore, 202 AD2d 895 [1994]).
Any dwelling unit located in a residential zoning district may be occupied only by a family or the equivalent of a family (Code of City of Binghamton § 410-26 [D]). As relevant to resolution of the issue presented by this proceeding, a functional and factual family equivalent is, in turn, defined as:
“A group of unrelated individuals living together and functioning together as a traditional family. In determining whether or not a group of unrelated individuals comprise [sic] a functional and factual family equivalent, a petition shall be presented before the Zoning Board of Appeals, who [sic] will consider, among other things, the following factors:
“A. Whether the occupants share the entire dwelling unit or act as separate roomers.
“B. Whether the household has stability akin to a permanent family structure. The criteria used to determine this test may include the following:
“(1) Length of stay together among the occupants in the current dwelling unit or other dwelling units.
“(2) The presence of minor, dependent children regularly residing in the household.
“(3) The presence of one individual acting as head of household.
*1035 “(4) Proof of sharing expenses for food, rent or ownership costs, utilities and other household expenses.
“(5) Common ownership of furniture and appliances among the members of the household.
“(6) Whether the household is a temporary living arrangement or a framework for transient living.
“(7) Whether the composition of the household changes from year to year or within the year.
“(8) Any other factor reasonably related to whether or not the group of persons is the functional equivalent of a family.” (Code of City of Binghamton § 410-5.)
Based on a review of the ZBA’s application of the foregoing criteria to the evidence in the record, it cannot be said that the ZBA’s decision is irrational. The record of its deliberations (record, exhibit F, at 61-67) and its written decision dated January 12, 2010 (record, exhibit A) reflect that the ZBA considered each of the enumerated factors in reaching a determination that is supported by the evidence that was before it.
Following the specified procedure, the ZBA first concluded that the occupants do not share the entire dwelling unit, instead acting as separate roomers, based on evidence — including photographs — showing that each has a separate room with his own refrigerator, computer, and television, and that each resident has his. own car.
The definition of functional and factual family equivalent requires that the ZBA next determine whether a living arrangement has stability akin to a permanent family structure and provides eight criteria which may be considered in that regard. The ZBA’s findings with respect to each factor, in support of its determination that the tenants’ living arrangement lacks the requisite degree of stability, may be briefly summarized as follows. The ZBA found that the tenants’ living arrangement is temporary, limited at most to the two-year lease term, based on evidence that the tenants are in the area only for the purpose of attending Binghamton University (record, exhibit F, at 64). This determination is also supported by the acknowledgment of petitioner’s counsel that the tenants could not be present at the ZBA hearing because they were then “on break” (record, exhibit F, at 12-13), and, further, that there is no expression of intent by the tenants to continue living together after leaving Binghamton University.
*1036 There are no minor, dependent children residing at the property. The ZBA noted, appropriately, that this fact was not dis-positive, and then proceeded to reject petitioner’s contention that John Kim functions as a head of household. While recognizing that the lease designates Kim as “head of the family,” the ZBA found little evidence that he functions in the role of a traditional head of household. It further determined that petitioner attempted to depict the tenants as a functional and factual family equivalent — in part by naming Kim as head of household — to circumvent the occupancy limitations imposed by the zoning ordinance. Notably, the record shows that the lease was executed after Sarah Grace Campbell, Esq., an attorney whose home borders the property, sent petitioner a letter that specifically advised her of the relevant occupancy restrictions and provided her with a copy of the definition of functional and factual family equivalent (record, exhibit F, at 48-49; record, exhibit E). Such evidence would permit the ZBA to rationally infer that petitioner had prior knowledge of the relevant provisions of the zoning ordinance when she prepared the lease designating Kim as head of the family, and that she did so in a deliberate attempt to circumvent the zoning ordinance.
The ZBA concluded that there was not substantial evidence of shared expenses. While acknowledging that there was some proof that the tenants shared payment of utility expenses, the ZBA noted that there was no evidence with regard to pooling of money or resources toward payment for food or other expenses. This finding is likewise supported by evidence that the zoning officer initially determined that each tenant separately paid his share of the rent directly to petitioner (record, exhibit B, at 8), and that petitioner’s counsel acknowledged that he did not have “any evidence that these guys buy food together” (record, exhibit F, at 16-17).
With respect to common ownership of furniture — all appliances being owned by the landlord — the ZBA decided that the evidence, including photographs, showed that most significant items, such as computers and televisions, were individually owned and not shared. In reaching its conclusion that the household is a temporary living arrangement or a framework for transient living, the ZBA noted that a lack of permanency was apparent in that none of the residents’ automobiles was registered to the property address, none of their driver’s licenses listed the property as a residence address, and none of the tenants was registered to vote in local elections.
*1037 Finally, after noting that there was no evidence to suggest a change of household composition during the lease term, the ZBA considered an additional factor, namely that the monthly rent of $2,800 — which it believed is three to four times the monthly rent typically paid for a single-family residence in Binghamton — is indicative of a lease to seven individuals, rather than to a single-family unit.[1]
It is readily apparent from the foregoing summary of its deliberations that the ZBA’s decision was rational in light of the evidence before it. Moreover, as noted in a strikingly similar case which arose under the very same ordinance now at issue, respondent’s determination is also supported by case law, which has sustained the view that a group of college students temporarily residing together and commuting to a nearby school lacks the permanency or community required in order to constitute a functional and factual family equivalent (Matter of Barvinchak v City of Binghamton Zoning Bd. of Appeals, Sup Ct, Broome County, Nov. 6, 2000, Monserrate, J., index No. 2000-1605, op at 5-6, citing City of White Plains v Ferraioli, 34 NY2d 300 [1974]). In that regard, it has long been settled that the police power may be legitimately used to further the goal of providing for a stable, uncongested single-family environment, and that uses associated with occupancy by numbers of transient persons, such as fraternities or housing for college students, may be restricted to further that goal (Ferraioli at 305-306; see also Village of Belle Terre v Boraas, 416 US 1, 9 [1974]).[2] Thus, the decision of the ZBA must be upheld.
*1038 Respondents seek to compel an eviction of the occupants pursuant to RPAPL 715, which provides, in relevant part, that any duly authorized enforcement agency of a municipality may compel eviction of tenants who utilize leased property for an illegal purpose. Respondents contend that petitioner’s lease of the property to college students in violation of the zoning ordinance constitutes an illegal commercial business which authorizes resort to RPAPL 715. The court disagrees.
By its terms, RPAPL 715 only authorizes eviction of tenants who are themselves utilizing real property for an illegal purpose (RPAPL 715 [1] [if “demised real property (is) used or occupied in whole or in part as a bawdy-house, or house or place of assignation for lewd persons, or for purposes of prostitution, or for any illegal trade, business or manufacture,” the owner or landlord may be caused to “make an application for the removal of the person so using or occupying the same”]).
Known as the “Bawdy House Law,” use of RPAPL 715 has been limited to situations where tenants may be charged with knowledge of a pattern of criminal conduct of a commercial nature occurring on the leased premises (see e.g. Matter of Zorn v Howe, 276 AD2d 51 [2000] [grounds for eviction under RPAPL 715 are illegal use of the leased premises by tenant]; 855-79 LLC v Salas, 40 AD3d 553 [2007] [eviction for illegal use requires a showing of habitual criminal use known to tenant]; Solow Bldg. Co. II, L.L.C. v Banc of Am. Sec., LLC, 13 Misc 3d 55, 57 [2006] [acts of criminal conduct by a single employee of a commercial tenant were an insufficient basis for eviction, pursuant to RPAPL 715, which requires a showing that the tenant has continually used the premises for an illegal purpose]; Normandy Realty v Boyer, 2 Misc 3d 407 [2003] [personal use of illegal drugs by an occupant is not a sufficient basis for eviction under RPAPL 715]; see also Matter of Woodin v Lane, 119 AD2d 969 [1986] [as a statutory remedy, RPAPL 715 must be strictly construed]). Here, while it has been determined that the landlord has entered into a residential lease not permitted by the local zoning ordinance, there is no proof that the tenants have used the property for any conduct envisioned by the statute, such as conduct of an illegal trade or business; therefore, RPAPL 715 may not be used to compel their eviction.
*1039 The temporary restraining order contained in the order to show cause signed on February 18, 2010 is vacated. Respondents are hereby permanently enjoined from any use of RPAPL 715 to enforce the decision of the ZBA dated January 12, 2010,[3] and the petition is otherwise dismissed, with prejudice.

. Petitioner argues that the ZBA erred in overlooking evidence in the record that several of the tenants are blood relatives, specifically that James Kim and Chris Kim are first cousins, and that Tommy Chen and Yin Chen are first cousins who are also second cousins with Sean Wing (petition 11 22). It cannot be said that the ZBA acted irrationally in choosing to place little weight on the fact that only three of the seven occupants are related — there being no evidence that the two separate groups of cousins are related. Moreover, as petitioner concedes, tenants fail to meet the definition of family under the zoning ordinance because not all of the occupants are related (petition K 13). Petitioner identifies no provision of the zoning ordinance that compels the ZBA to further consider this factor or to afford it any weight in making its determination.

. Petitioner argues that respondent made its determination primarily because the occupants are college students. That argument is belied by the proof, which, as summarized above, shows that the ZBA specifically considered the evidence of their unique living arrangement in applying each of the factors enumerated in the ordinance. While an ordinance that contains a presumption that college students do not constitute a functional family unit *1038 may not pass constitutional muster (see Geneseo Rental Hous. Assn. v Village of Geneseo, Sup Ct, Livingston County, Cornelius, J., index No. 2006-0480), the ZBA is not prohibited from considering the actual living arrangements of the tenants merely because they are college students.

. Respondents requested that the court specifically authorize respondent City to proceed pursuant to RPAPL 715, upon affirmation of the ZBA’s decision (respondents’ mem of law, dated Mar. 3, 2010, at 26); therefore, the court has the discretion to grant a permanent injunction sua sponte, notwithstanding petitioner’s failure to request such relief (see generally Gryphon Dom. VI, LLC v APP Intl. Fin. Co., B.V., 41 AJD3d 25, 39 [2007]; Indosuez Intl. Fin. v National Reserve Bank, 304 AD2d 429 [2003]). In light of their request, and having argued the issue in their memorandum of law, respondents cannot claim surprise or prejudice. In addition, the court asked respondents’ counsel, at oral argument, to provide any available authority supporting their argument that RPAPL 715 may be used to compel eviction based on a landlord’s illegal conduct and invited further submissions on that specific issue; no further submissions were received from any party in that regard.