OPINION OF THE COURT
J. Scott Odorisi, J.
This is a hybrid Civil Practice Law and Rules articles 30 and 78 special proceeding seeking: (1) a reversal of the respondent/ defendant Town of Henrietta Zoning Board of Appeals’ (ZBA) determination upholding three notices of violation (NOV) issued against petitioners/plaintiffs (petitioners) in regard to various rental properties; (2) a permanent injunction prohibiting the Town of Henrietta (the Town) from enforcing the NOVs; (3) a declaratory judgment adjudicating that the subject rental properties qualify as prior legal existing uses and are thus thereby exempt from the 2011 zoning code amendment addressing non-family rentals; and (4) a declaratory judgment adjudicating that the Town Code’s new definition of “family” is unconstitutional as discriminatory zoning.
Based upon a review of petitioners’ verified petition and complaint, dated August 22, 2012, respondents’ answer with objections in point of law, dated November 2, 2012, petitioners’ reply, dated November 16, 2012, as well as upon oral argument made at Special Term, this court hereby denies the verified petition and complaint in its entirety for the legal and factual reasons set forth hereinafter.
Lawsuit Facts
The crux of this lawsuit stems from the Town Code’s definition, at varying times, of “family” as it applies to permissible zoning uses.
The Town Code’s zoning provisions (ch 265) were implemented on July 19, 1978. As part of the Code, R-2 designated residential districts are mainly limited to single-family and two-family houses, but with a special permit, other multi-dwelling *328 buildings are permissible. (See Code of Town of Henrietta [Town Code] § 295-6 [B].) The original Code defined “family” as:
“One or more persons related by blood, marriage or legal adoption residing or cooking or warming food as a single housekeeping unit, with whom there may not be more than two boarders, roomers or lodgers in a common household. A boarder, roomer or lodger residing within the family household is a person who does or does not pay a consideration therefor to such family for such residence.” (See Town Code § 295-2 [B].)
The Town started receiving a large number of complaints from residents in one neighborhood—an R-2 residential district—very near the Rochester Institute of Technology campus about problems associated with houses rented out to college students, namely loud and disorderly house parties, excessive traffic, and parking congestion. A large number of these houses were owned by Michael Spaan through his various businesses under the Atlas name.
Due to a recommendation by the Town’s Attorney, the Town Board proposed changing the definition of family as the existing definition was likely unconstitutional because it failed to provide any language permitting the functional equivalent of a family to reside together. On November 2, 2011, the Town Board held a public hearing on the proposed amendment at which several community members voiced their opinions. On December 7, 2011, the Town Board amended the definition of “family” as follows:
“FAMILY
“A. Includes:
“(1) One, two, or three persons occupying a dwelling unit; or
“(2) Four or more persons occupying a dwelling unit and living together as a traditional family or the functional equivalent of a traditional family.
“B. It shall be presumptive evidence that four or more persons living in a single dwelling unit who are not related by blood, marriage or legal adoption do not constitute the functional equivalent of a traditional family.
“C. In determining whether individuals are living together as the functional equivalent of a traditional family, the following criteria must be present:
*329 “(1) The group is one which in theory, size, appearance, structure and function resembles a traditional family unit.
“(2) The occupants must share the entire dwelling unit and live and cook together as a single housekeeping unit. A unit in which various occupants act as separate roomers may not be deemed to be occupied by the functional equivalent of a traditional family.
“(3) The group shares expenses for food, rent or ownership costs, utilities and other household expenses.
“(4) The group is permanent and stable. Evidence of such permanency and stability must include:
“(a) The presence of minor dependent children regularly residing in the household who are enrolled in a local school.
“(b) Members of the household having the same address for the purpose of voter registration, driver’s license, motor vehicle registration and filing of taxes.
“(c) Members of the household are employed in the area.
“(d) The household has been living together as a unit for a year or more, whether in the current dwelling unit or other dwelling units.
“(e) Common ownership of the furniture and appliances among the members of the household.
“(f) The group is not transient or temporary in nature.
“(5) Any other factor reasonably related to whether or not the group is the functional equivalent of a traditional family.” (Local Law No. 3 [2011] of Town of Henrietta.)
On March 20, 2012, the Town Director of Building and Fire Prevention issued three NOVs to petitioners alleging violations of section 295-2 (B) because 26 homes were alleged to be rented to four or more individuals who were not a traditional family or the functional equivalent of a traditional family. The NOVs required petitioners to provide proof that the renters were a family, or the functional equivalent of one, within 30 days or the Town would commence either a legal action for an injunction or a prosecution of Town Code violations with potential criminal penalties.
*330 Instead of dealing with the Town Director, and in mid-April 2012, petitioners appealed the NOVs to the ZBA and requested a hearing. In their appeals, petitioners admitted that most of the subject properties were rented to four unrelated individuals, but those rentals qualified as legal prior existing uses and thereby were not subject to the renting prohibition. Petitioners further contended that the prior definition of family was unconstitutional, and because the prior Code section was thus unenforceable, there was no legal provision prohibiting the subject rentals at the time they first existed in 2002. In support of its prior legal existing use claim, petitioners provided the ZBA with each lease that predated the December 2011 amendment. In the alternative, petitioners contended that the renters qualified as functional equivalents of a traditional family.* Petitioner also argued that the Director lacked probable cause to issue the NOVs and that the 2011 amendment to the definition of “family” was unconstitutional as exclusionary zoning.
On June 26, 2012, the Town’s Attorney wrote to the ZBA in opposition to petitioners’ appeal. The Town’s Attorney submitted that there was no prior legal existing use as the prior “family” definition was never ruled unconstitutional by a court, and that the ZBA could not make that legal determination itself. The Town’s Attorney countered petitioners’ probable cause argument by noting that no legal proceeding had yet been commenced so that doctrine was inapplicable. Lastly, the Town’s Attorney submitted that the ZBA did not have the authority to rule that the new “family” definition was unconstitutional.
Although the matter was heard before the ZBA on June 27, 2012, no minutes or transcript of the hearing was produced. However, the parties stipulated at Special Term that the ZBA’s eventual decision was confined to the records provided to the court.
On July 25, 2012, the ZBA denied petitioners’ appeals, and issued a letter decision the next day. The ZBA concluded that it did not have the authority to resolve the legal issue of the Code’s constitutionality, either as previously drafted or as presently worded. The ZBA additionally held that probable cause was not required for the NOVs, but that the same existed in any event.
In August 2012, petitioners commenced this joint special proceeding. Petitioners averred that the ZBA’s determination *331 was affected by an error of law and was arbitrary and capricious as the rentals qualified as prior legal existing uses because the prior Code provision was invalid (first cause of action). Petitioners also alleged that the ZBA’s determination was affected by an error of law and was arbitrary and capricious as respondents failed to prove that the rentals were occupied by four or more unrelated persons thereby establishing probable cause for a Code violation (second cause of action). In addition, petitioners sought declaratory relief per CPLR 3001 adjudicating the subject rentals prior legal existing uses (third cause of action). Lastly, petitioners sought further declaratory relief finding the new Code provision defining “family” unconstitutional (fourth cause of action).
Respondents answered on or about November 2, 2012, denying petitioners’ various claims that the ZBA’s determination was arbitrary and capricious and that the Code was ever unconstitutional. Respondents also raised some statute of limitations defenses to petitioners’ constitutional claims.
Petitioners replied to address the statute of limitations defense and contended that they lacked standing to challenge the pre-2011 Code definition of family so its present claims were not time-barred.
Each of petitioners’ claims will be examined in the order that they are set forth in the verified petition and complaint.
Legal Discussion
CPLR Article 78 Relief
Petitioners first assail the ZBA’s determination denying their appeals via CPLR article 78.
As a preliminary procedural matter, respondents claim that the CPLR article 78 portion of the special proceeding is time-barred by CPLR 217 (l)’s four-month statute of limitations, which they claim ran from the passage of the new Code language in December 2011. Respondents are incorrect. CPLR 217 (1) states that “a proceeding against a body or officer must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner.” In the CPLR article 78 context, as juxtaposed to their CPLR 3001 claims, petitioners are not challenging the new “family” definition, but the ZBA’s determination denying their appeals on July 25, 2012. This special proceeding was commenced on August 23, 2012, well within the four-month limitations period. Therefore, this discrete portion of respondents’ statute of limitations objection is erroneous.
*332 As to the merits, CPLR article 78 exists to provide court review of various administrative determinations. (See CPLR 7801, 7802.) Given petitioners’ allegations, they are seeking mandamus to review relief which permits an administrative determination to be set aside if, among other things, it “was . . . affected by an error of law or was arbitrary and capricious.” (CPLR 7803 [3].)
As to the first type of error:
“The arbitrary or capricious test chiefly ‘relates to whether a particular action should have been taken or is justified . . . and whether the administrative action is without foundation in fact.’ Arbitrary action is without sound basis in reason and is generally taken without regard to the facts. . . . [T]he proper test is whether there is a rational basis for the . . . order.” (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974] [citations omitted and emphasis added]; see also Matter of 512-3rd St. v New York State Liq. Auth., 217 AD2d 1010 [4th Dept 1995].)
In reviewing alleged arbitrary and capricious administrative determinations, a reviewing court’s function is limited to “whether the record contains sufficient evidence to support the rationality of the . . . determination.” (Matter of Coco v City of Rochester Zoning Bd. of Appeals, 236 AD2d 826, 828 [4th Dept 1997] [dismissing CPLR article 78 proceeding].) A petitioner bears the “heavy burden” of proving that the decision was not grounded upon a rational basis. (See Matter of Rayle v Town of Cato Bd., 295 AD2d 978, 980 [4th Dept 2002] [dismissing petition because the petitioners failed to meet their burden of proof), Iv denied 747 NYS2d 851 [4th Dept, Oct. 1, 2002].)
Moreover, and in the zoning context, the interpretation by a zoning board of its governing code is generally entitled to great deference by the courts—so long as the interpretation “is neither ‘irrational, unreasonable nor inconsistent with the governing [code],’ it will be upheld.” (Matter of Emmerling v Town of Richmond Zoning Bd. of Appeals, 67 AD3d 1467, 1467 [4th Dept 2009] [citations omitted]; see also Matter of Retail Prop. Trust v Board of Zoning Appeals of Town of Hempstead, 98 NY2d 190, 196 [2002].)
As to the second type of error, an error of law, its meaning is rather clear cut and most often involves an allegation that the *333 agency improperly interpreted or applied a statute or regulation. (See New York City Health & Hosps. Corp. v McBarnette, 84 NY2d 194, 205 [1994].) In this regard, courts will uphold the interpretation of regulations by the agencies responsible for their administration if such an interpretation is reasonable. (See Matter of Howard v Wyman, 28 NY2d 434, 438 [1971].) Thus, the arbitrary and capricious and error of law standards are very similar.
Petitioners argue that the ZBA’s determination denying their appeals was both arbitrary and capricious, and also effected by an error of law, because: (1) the subject rentals qualified as prior legal existing uses when the prior definition of “family” was “unconstitutional”; and (2) respondents failed to show that the NOVs were supported by probable cause to believe that the renters were not a family.
Petitioners’ arguments do not warrant relief under CPLR article 78.
1. First Cause of Action—Prior Legal Use Contention
Petitioners’ prior legal existing use argument hinges upon whether the pre-2011 definition of “family,” without the functional equivalent language, was constitutional. Respondents counter that the ZBA was without authority to make that legal determination.
Petitioners are correct that the earlier “family” definition was likely to have been held unconstitutional per McMinn v Town of Oyster Bay (66 NY2d 544 [1985]), if the matter had been litigated in a court of law. Although the Town Attorney and the Town Board suspected that the definition was invalid, its constitutionality was never judicially determined. This key fact makes the present case distinguishable from petitioners’ unreported case of People v Gravina (Oneonta City Ct, Mar. 24, 2011) wherein the Otsego County Supreme Court earlier declared the “family” definition unconstitutional and also struck it from the Code prior to the leases at issue in that case having been executed and the landlord having been charged. Unlike Gravina, the Town of Henrietta Code’s definition of “family” was never judicially reviewed and it was not stricken. Perhaps ultimately unenforceable, there was a provision on the books which prohibited such rentals at the time petitioners leased the subject properties.
This court finds respondents’ contention concerning the ZBA’s lack of authority to make such a legal determination *334 persuasive. In particular, the Town Law which created zoning boards of appeals in general provides that
“the jurisdiction of the board of appeals shall be appellate only and shall be limited to hearing and deciding appeals from, and reviewing any order, requirement, decision, interpretation, or determination made by the administrative official charged with the enforcement of any ordinance or local law adopted pursuant to this article.” (Town Law § 267-a [4] [emphasis added]; see also Town Law § 267-b [1].)
The powers conferred on a ZBA by statute do not include the ability to review the validity of legislative enactments such as zoning codes. (See also Scarsdale Supply Co. v Village of Scarsdale, 8 NY2d 325, 330 [1960] [ZBAs cannot review town board actions and also cannot correct errors of judgment in zoning]; Western Stone Prods. Corp. v Town Bd. of Town of Lockport, 25 AD2d 493 [4th Dept 1966] [Board of Appeals had no power to make a determination on the validity of the attacked ordinance]; Monoco Oil Co. v Town of Pittsford, 59 Misc 2d 750, 750-751 [Sup Ct, Monroe County 1969] [a ZBA has no power to determine the validity of an ordinance].) Without such authority, the Henrietta ZBA was required to apply the presumption of validity to the pre-2011 definition of “family.” (See McMinn, 66 NY2d at 548.)
A very illustrative, and factually analogous case, is Matter of Smith v Town of Plattekill (13 AD3d 695 [3d Dept 2004]). In Smith, the petitioners sought CPLR article 78 relief for the ZBA’s determination that an off-road motorcycle track was a permissible use in a residential district. (Id. at 696.) In making that determination, the ZBA relied upon advice from counsel that an amendment to the zoning code prohibiting such tracks was likely invalid and set aside the amendment to permit the track to continue in use. (Id.) At the first review level, the Supreme Court sustained the ZBA’s determination. (Id.) Upon an appeal, the Appellate Division reversed based upon the legal rules that a ZBA must employ the presumption of validity and that a ZBA lacked the authority “to determine the validity of the ordinance it is called upon to interpret.” (Id. at 696-697.) Despite having advice from counsel about the validity of the subject amendment, the Appellate Division ruled that the ZBA exceeded its authority in treating the amendment as invalid. (Id. at 697.) Accordingly, the Appellate Division granted the petition and annulled the ZBA’s determination. (Id.)
*335 As proven by the holding in Smith, the Henrietta ZBA acted within the confines of its limited jurisdiction by not addressing the constitutionality of the old definition of “family,” even in light of the opinion of the Town Attorney. (See also Matter of Williamsville/Southeast Amherst Homeowner’s Assn. v Zoning Bd. of Appeals of Town of Amherst, 188 AD2d 1008, 1009 [4th Dept 1992] [the ZBA exceeded its authority by deciding that a decision of the Town Board was invalid and unenforceable].) In turn, it cannot be said that the ZBA’s decision not to afford petitioners a prior legal existing use for the subject rentals was affected by an error of law or arbitrary and capricious.
In all, petitioners are not entitled to secure a prior legal use finding via CPLR 7803 (3), and the ZBA’s determination will therefore be upheld. (See CPLR 7806.)
2. Second Cause of Action—Probable Cause Argument
Petitioners’ second CPLR article 78 argument is that the ZBA was wrong to deny their appeals when the NOVs were faulty for a lack of probable cause to believe that the renters were indeed not a family. This submission is legally unsound.
The NOVs were unambiguous in their wording that any legal action, civil or criminal, would not be commenced until after 30 days in order to allow petitioners time to respond (verified petition and complaint, exhibits D-F). Despite this clear phrasing, petitioners assert that the NOVs were appearance tickets that commenced a criminal proceeding given the potential criminal penalties they listed. This is not an accurate legal analysis.
The Criminal Procedure Law is clear that a criminal proceeding is commenced only upon the filing of an accusatory instrument. (See CPL 1.20 [16], [17].) The NOVs were not one of the permitted forms of an accusatory instrument. (See CPL 1.20 [1].) Neither were they appearance tickets as they did not demand petitioners’ presence in a local criminal court. (See CPL 1.20 [26].) Given these legal provisions, petitioners’ probable cause argument is untenable.
As a result of the above, petitioners’ probable cause argument must be rejected as a basis to set aside the ZBA’s determination as either an error of law or arbitrary and capricious. (See CPLR 7806.)
In sum, petitioners are not entitled to any relief under CPLR article 78. (See CPLR 7806.)
CPLR 3001 Declaratory Judgment Relief
Petitioners’ other form of requested relief is a declaratory judgment ruling that the rentals are prior legal existing uses *336 and also that the new definition of family is unconstitutional as exclusionary zoning.
Declaratory relief is set forth in CPLR 3001, which provides that “[t]he supreme court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed.” (CPLR 3001 [emphasis added]; see also CPLR 3017 [b].)
“[A] declaratory judgment ‘is a remedy sui generis and escapes both the substantive objections and procedural limitations of special writs and extraordinary remedies.’ ” (Matter of Morgenthau v Erlbaum, 59 NY2d 143, 147 [1983].) It is available in a wider range of circumstances than CPLR article 78 relief. (See Matter of Morgenthau v Roberts, 65 NY2d 749 [1985].) As the Court of Appeals has decreed about declaratory judgments:
“The use of a declaratory judgment, while discretionary with the court, is nevertheless dependent upon facts and circumstances rendering it useful and necessary. The discretion must be exercised judicially and with care. It is usually unnecessary where a full and adequate remedy is already provided by another well-known form of action. The general purpose of the declaratory judgment is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation either as to present or prospective obligations.” (James v Alderton Dock Yards, 256 NY 298, 305 [1931] [emphasis added and citation omitted].)
Each of petitioners’ declaratory judgment causes of action do not survive judicial review.
1. Third Cause of Action—Petitioners’ Prior Use Assertion
As an alternative to CPLR article 78 relief, petitioners first employ CPLR 3001 to adjudicate their rights to a prior legal existing use exception. However, that first declaratory judgment claim is fatally procedurally defective and thus subject to dismissal.
The third cause of action hinges upon the constitutionality of the pre-2011 definition of “family” as originally enacted in chapter 265. In response to this claim, respondents contend that it is an untimely relief request. More specifically, respondents argue that CPLR 213’s six-year limitations period prevents petitioners from contesting the former definition of *337 “family” in order to establish their current prior existing use claim. Petitioners counter that they had no standing to challenge the old definition and should not be prevented from doing so now. This court disagrees with petitioners, and in turn, concludes that the third cause of action is barred by the statute of limitations.
As to the threshold issue of standing, courts have implemented a “liberal policy of standing in zoning cases.” (Campbell v Barraud, 58 AD2d 570, 571 [2d Dept 1977] [finding standing to challenge zoning ordinance].) A plaintiff in a declaratory judgment action demonstrates a sufficient interest in the zoning matter for which a judgment is sought if the value of plaintiffs land is reduced or its marketability is destroyed by the ordinance in issue. (See Braghirol v Town Bd. of Town of Chester, 70 Misc 2d 812, 814 [Sup Ct, Orange County 1972] [finding standing to challenge zoning decision].) “Generally, any person who can show that the existence or enforcement of a zoning restriction adversely affects, or will adversely affect, a property interest vested in him . . . has the requisite justiciable interest in the controversy, and is a proper party plaintiff’ in a declaratory judgment lawsuit. (Id. [emphasis added].)
More importantly, this scenario was addressed by the Appellate Division in the McMinn case—a decision which was affirmed by the Court of Appeals. (See McMinn v Town of Oyster Bay, 105 AD2d 46 [2d Dept 1984].) In McMinn, the defendant town advocated for a dismissal on the ground that the plaintiffs did not have standing to challenge the zoning code’s definition of “family” as it applied to a rental for which the plaintiffs were criminally charged because the plaintiffs were under contract for sale of that lone house. (See McMinn, 105 AD2d at 50.) The Second Department disagreed and ruled that the plaintiffs still retained standing to contest the “family” definition as they owned other properties which were subject to the rental zoning ordinance in question and thus subjected the plaintiffs to potential “negative effect[s] on the value of their property.” (Id.) That is exactly the same harm petitioners are claiming in the case at bar. At the Court of Appeals, the defendant town withdrew its standing objection, but the court still took time to make a finding that the plaintiffs had “standing to challenge the legal limitations imposed on their properties and their ability to rent such properties in the future” so as to “guide their future conduct.” (McMinn, 66 NY2d at 548 n.)
Per McMinn, there can be no doubt that petitioners in this case had standing to contest the earlier definition of “family” *338 even without having yet been issued an NOV As in McMinn, petitioners’ many properties were subject to the zoning code’s rental restriction and petitioners would have suffered financial injury if it was enforced against them. (See e.g. Greens at Half Hollow, LLC v Town of Huntington, 15 Misc 3d 415, 417 [Sup Ct, Suffolk County 2006] [as the plaintiff was clearly subject to the constraints of the local town law, and was in jeopardy of further prosecutions and adjudications through the ZBA, it had standing to seek an adjudication that the law was unconstitutional].) Contrary to petitioners’ claim, they did not need to be cited by the Town before they had standing to sue. (See Province of Meribah Socy. of Mary v Village of Muttontown, 148 AD2d 512, 515 [2d Dept 1989] [the petitioner was not required to establish that it had applied for and was denied the special use permit before it could facially attack the subject ordinance].)
Petitioners were aggrieved parties and a justiciable controversy existed to have permitted a viable declaratory judgment action well before December 2011 when the definition was changed in order to clarify their prospective obligations. (See e.g. Janas v Town Bd. of Town of Fleming, 51 AD2d 473, 477 [4th Dept 1976] [as the zoning ordinance presented an obstacle to the plaintiffs proposed use of his land, this immediate and genuine economic interest gave the plaintiff standing to challenge the ordinance as unconstitutional on its face].)
Having found that petitioners had standing to sue, the court next addresses the application of the statute of limitations. Declaratory judgment actions are subject to the six-year limitations period contained in CPLR 213 (1). (See Solnick v Whalen, 49 NY2d 224, 229-230 [1980].) “The time within which an action must be commenced . . . shall be computed from the time the cause of action accrued to the time the claim is interposed.” (CPLR 203 [a].) Typically, when a plaintiff challenges a legislative act, such as a zoning ordinance, the declaratory judgment claim accrues when the law was passed. (See Matter of McCarthy v Zoning Bd. of Appeals of Town of Niskayuna, 283 AD2d 857, 858 [3d Dept 2001] [affirming dismissal of untimely declaratory judgment claim]; Matter of Frontier Ins. Co. v Town Bd. of Town of Thompson, 252 AD2d 928, 930 [3d Dept 1998].) As noted in McCarthy, “[t]o allow an alleged continuing harm which flows from a fully completed, separate, discrete act to infinitely extend the Statute of Limitations . . . would vitiate the purpose underlying the limitations period.” (McCarthy, 283 AD2d at 858.) Consequently, petitioners cannot receive the benefit of a *339 running accrual up until the “family” definition was revoked in December 2011.
However, petitioners did not own the subject rental properties when the Code originally went into effect. Nevertheless, and per petitioners’ own pleadings, they rented out the subject houses “to four unrelated persons going back as far as 2002” (verified petition and complaint at 10, ¶ 37). Even affording petitioners the latest possible date in 2002—December 31, 2002—as the accrual date when petitioner was first subject to the zoning code, the statute of limitations still expired no later than December 31, 2008.
Having failed to assail the prior “family” definition in order to secure a legal existing use determination by the end of 2008, petitioners are prohibited from doing so now at this late date.
In all, the third cause of action is barred by the statute of limitations. (See e.g. Dean v Van Scoter, 98 AD2d 983 [4th Dept 1983] [finding that the declaratory judgment action was time-barred].)
2. Fourth Cause of Action—Exclusionary Zoning Submission
Petitioners do not have a viable constitutional challenge to the new wording of “family.”
CPLR 3001 is routinely invoked to litigate constitutional challenges to laws, including local zoning ordinances. (See Cayuga Indian Nation of N.Y. v Gould, 14 NY3d 614, 634 [2010]; Todd Mart v Town Bd. of Town of Webster, 49 AD2d 12, 16 [4th Dept 1975]; Siegel, NY Prac § 437 at 766 [5th ed 2011].)
The power to zone is a broad one. (See Group House of Port Washington v Board of Zoning & Appeals of Town of N. Hempstead, 45 NY2d 266, 271 [1978].) Therefore, “[z]oning ordinances, like other legislative enactments, are presumed constitutional and the burden is on the party challenging the ordinance to prove its unconstitutionality beyond a reasonable doubt.” (McMinn, 66 NY2d at 548.) This burden has been described as a heavy one. (See Matter of Town of Bedford v Village of Mount Kisco, 33 NY2d 178, 186 [1973].)
Nevertheless, this court is cognizant that “a municipality may not legitimately exercise its zoning power to effectuate socioeconomic or racial discrimination.” (Suffolk Hous. Servs. v Town of Brookhaven, 70 NY2d 122, 129 [1987] [affirming denial of exclusionary zoning claim]; McMinn, 105 AD2d at 51 [holding that the plaintiffs failed to prove their exclusionary zoning claim].) Therefore, and for a zoning ordinance to be a valid *340 exercise of the police power, it must: (1) have been enacted in furtherance of a legitimate governmental purpose, and (2) bare a “reasonable relation between the end sought to be achieved by the regulation and the means used to achieve that end.” (McMinn, 66 NY2d at 549.) Where a party attacks a zoning ordinance, they bear the burden to show that the law bears no substantial relation to public health, safety, and general welfare. (See Matter of Valley Realty Dev. Co. v Town of Tully, 187 AD2d 963 [4th Dept 1992] [rejecting unconstitutional exclusionary zoning claim as the petitioner failed to meet its burden of proof].)
Here, and as in Valley Realty, petitioners have not overcome the presumption of constitutionality and met their heavy burden of proof to invalidate the 2011 definition of “family.” (See also Matter of Village Bd. of Trustees of Vil. of Malone v Zoning Bd. of Appeals of Vil. of Malone, 164 AD2d 24, 28 [3d Dept 1990] [because the Village Code allowed mobile home parks under “special application,” as opposed to a complete ban, the petitioner failed to prove a case of impermissible exclusionary zoning].)
It is important to start by noting that the identical definition of “family” was upheld by the Fourth Department. (See Village of Brockport v Webster, 283 AD2d 1010 [4th Dept 2001]; see also Matter of Morrissey v Apostol, 75 AD3d 993, 996 [3d Dept 2010]; Matter of Unification Theol. Seminary v City of Poughkeepsie, 201 AD2d 484 [2d Dept 1994].) Petitioners asserted at Special Term that the Village of Brockport case was inapposite as it did not address an exclusionary, i.e., discriminatory, zoning claim. Contrary to petitioners’ assertion, the Fourth Department in sustaining the same “family” definition expressly decreed that it was “not illegal, discriminatory, void or unenforceable under the New York Constitution and laws of the State of New York or the United States Constitution.” (Village of Brockport, 283 AD2d at 1011 [emphasis added].) Based upon a review of the appellate record for the Village of Brockport appeal held at the Fourth Department library, the defendants in that case advanced a “regional housing needs” argument based upon alleged discrimination against a “segment of the housing market” (record on appeal at 77, 84-86; defendants’ brief at 4-5 [“the challenged Brockport definition (of family) was enacted for an exclusionary purpose”]). Thus, the Village of Brockport case went beyond just a mere facial challenge to the ordinance, but also incorporated an exclusionary zoning claim as well. The Vil *341 lage of Brockport case therefore compels denial of petitioners’ exclusionary zoning claim.
Furthermore, and in finding no discrimination under the United States Constitution, the Fourth Department cited to Village of Belle Terre v Boraas (416 US 1 [1974]) wherein the United States Supreme Court rejected a similar exclusionary zoning argument for an ordinance directed at non-families. (See Village of Brockport, 283 AD2d at 1010.) In Village of Belle Terre, a landlord and college student renters argued that an ordinance which limited homes to single-family dwellings and used the traditional definition of a family was invalid because it interfered with one’s right to live where they chose, barred seemingly objectionable people, and was a veiled social preference for groups “congenial” to the present residents. (See Village of Belle Terre, 416 US at 7.) Petitioners in the present case are making the same arguments which have been rejected by the country’s highest court. In fact, the Supreme Court noted that “every line drawn by a legislature leaves some out that might well have been included,” and that the exercise of legislative discretion in drawing that line should be deferred to by the judiciary. (See Village of Belle Terre, 416 US at 8.) Furthermore, the Supreme Court keenly recognized that
“[t]he regimes of boarding houses, fraternity houses, and the like present urban problems. More people occupy a given space; more cars rather continuously pass by; more cars are parked; noise travels with crowds.
“A quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs. This goal is a permissible one .... The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people.” (Village of Belle Terre, 416 US at 9; see also Matter of Bayram v City of Binghamton, 27 Misc 3d 1032, 1037 [Sup Ct, Cortland County 2010] [denying article 78 relief to landlord who attacked city ordinance defining “family” as the college student renters were not the functional equivalent of a traditional family].)
Based upon the rationale of Village of Belle Terre, the Town of Henrietta’s Code must be sustained as a valid exercise of the *342 municipality’s authority. (See Matter of Committee for Betterment of Mount Kisco v Taylor, 63 AD2d 650, 651 [2d Dept 1978] [acknowledging that Village of Belle Terre “sustained the authority of municipalities to preserve neighborhood character through single family zoning”].)
Moreover, and contrary to petitioners’ claim, the zoning ordinance does not exclude all students, or even all nontraditional family units, from residing in Henrietta, just groups of over three who are not the functional equivalent of a traditional family. This is not exclusionary zoning, especially given the rebuttable presumption the Code incorporates. (See e.g. Morgan v Town of W. Bloomfield, 295 AD2d 902, 903 [4th Dept 2002] [code amendment did not constitute exclusionary zoning because the change only limited the number of mobile homes and did not completely outlaw them].) Rather, the rental prohibition was enacted to ensure the quiet family nature of the residential sections of the Town—a legitimate governmental function condoned by the Supreme Court—while at the same time still permitting reasonable rental situations.
Petitioners’ heavy reliance on Berenson v Town of New Castle (38 NY2d 102 [1975]) is misplaced as that case is materially factually distinguishable. In Berenson, the town had an outright ban on all multifamily dwellings. (See Berenson, 38 NY2d at 105-106, 107.) Unlike Berenson, the Town of Henrietta Code § 295-2 (B)’s family definition is not a complete ban on non-family rentals. Instead, it is a balanced approach to preserving a single-family home environment with the need to accommodate alternative familial living arrangements, including the student housing population.
The Court of Appeals in Berenson even commented that
“[z]oning ordinances are susceptible to constitutional challenge only if ‘clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare’ . . . [and that] the validity of a zoning ordinance depends on the facts of the particular case and whether it is ‘really designed to accomplish a legitimate public purpose.’ ” (Berenson, 38 NY2d at 107 [citation omitted]; see also Suffolk Hous. Servs. v Town of Brookhaven, 109 AD2d 323, 331 [2d Dept 1985] [Berenson does not “purport to mandate that a zoning ordinance make it possible for people of all classes to live in a given community”], affd 70 NY2d 122 [1987].)
*343 Respondents in the present case adhered to the foregoing permissible objectives, and it is not for this court to second-guess that discretionary decision. As cautioned against in Berenson, reviewing courts should not assume “the tasks of a regional planner.” (Berenson, 38 NY2d at 111 [zoning is essentially a legislative act]; see also McDonough v Apton, 48 AD2d 195, 198 [4th Dept 1975] [even if the validity of a zoning ordinance is fairly debatable, the judgment of the legislative body which enacted it must prevail].)
In sum, this court declines to issue a declaratory judgment voiding the Code’s 2011 definition of “family” as it does not effectuate exclusionary zoning. (See e.g. Asian Ams. for Equality v Koch, 72 NY2d 121, 134 [1988] [rejecting exclusionary zoning cause of action].)
Conclusion
Based upon all of the foregoing, it is the decision of this court that the first, second, and fourth causes of action in the verified petition and complaint be denied and that the third cause of action be dismissed. However, this court precludes any civil or criminal enforcement against petitioners, or the tenants, until after June 1, 2013, to afford the affected student tenants—who are not parties to this lawsuit and are in the middle of their quarter—time to find new living arrangements.
As both sides withdrew their respective requests for fees and costs at Special Term, no such award will be issued.

 Petitioners waived this discrete claim by not including it in their pleadings. (See Baltimore & Ohio R. R. Co. v County of Genesee, 112 AD2d 725 [4th Dept 1985].)